[Civ. No. 825. Third Appellate District.—July 18, 1911.]

## A. A. COURTENEY, Respondent, v. STANDARD BOX COMPANY, a Corporation, Appellant.

ACTION FOR GOODS SOLD AND DELIVERED—DEFENSE—SALE AS AGENT FOR CONSOLIDATED CORPORATIONS—CONFLICT OF EVIDENCE—SUPPORT OF VERDICT.—In an action for goods sold and delivered by the plaintiff to the defendant, in which the defense was that the plaintiff sold and delivered the goods solely as agent for consolidated corporations, and the evidence was conflicting and the verdict was for the plaintiff, whose testimony was sufficient to sustain the verdict, it cannot be disturbed upon appeal.

ID.—COUNTERCLAIM AGAINST AGENCY OF CONSOLIDATED CORPORATIONS—BURDEN OF PROOF.—Where the defendant pleaded a counterclaim against an agency formed from consolidated corporations, for which agency plaintiff is alleged to have sold and delivered the goods as secretary and business agent, against which consolidated agency defendant pleaded a counterclaim for damages for breach of contract, it was necessary, in order to support its counterclaim, to establish that plaintiff in the sale of the goods was acting as business agent for such agency, and not in an individual capacity.

ID.—PROOF BY PLAINTIFF—SPECIAL PURCHASE FROM UNASSOCIATED CORPORATION — DELIVERY FOR PLAINTIFF—SPECIAL VERDICT—COUNTER-

CLAIM NEGATIVED.—Where the evidence for the plaintiff proved a purchase made by plaintiff from an unassociated corporation, and a delivery from such corporation to defendant on plaintiff's account with defendant, and the special verdict found that the goods were sold by plaintiff to defendant and so delivered, and that said corporation was not associated in business with such consolidated agency and was not a member thereof, such special verdict negatives the counterclaim and sustains the plaintiff's claim.

ID.—EVIDENCE OF DEFENDANT'S MANAGER — EXCLUSION OF ANSWERS WITHOUT PREJUDICE.—It is held that the exclusion of answers to questions asked of the manager of the defendant corporation as to his ignorance that the sale and delivery were on plaintiff's account until the receipt of a letter from plaintiff after the sale and delivery so informing him, even if the objections to such answers were erroneous in form, was without prejudice to any substantial rights of the defendant.

ID.—INSTRUCTION INVOLVING UNCONTRADICTED FACT NOT PREJUDICIAL.— It is held, in view of the evidence, that an instruction involving a question of fact, in accordance with uncontradicted evidence, though erroneous, was without prejudice, especially when the entire charge of the court was otherwise correct, and embodied all the principles of law pertinent to the issues with marked clearness.

ID.—PROPER INSTRUCTION—SALE—COUNTERCLAIM.—The court properly instructed the jury that unless they found that plaintiff, in the sale of the goods, acted for the agency, they should disregard all testimony with respect to any dealings it may have had with defendant, and any suit the defendant may have brought and maintained against such agency, referring to its alleged counterclaim against the agency. The court did not by such instruction take from the jury the question of fact whether the sale was for the agency or for plaintiff individually, but that if they found the latter, the evidence as to counterclaim against the agency should be disregarded as immaterial.

ID.—RIGHT OF PLAINTIFF TO RECOVER INTEREST—EXPRESS CONTRACT— DEDUCTION OF FREIGHT CHARGES—ACTION FOR RESIDUE—RULE IN- APPLICABLE.—Where the contract for the sale of the goods was for an agreed price, subject to deduction for freight charges to be advanced by the defendant when the goods were delivered, and the suit was for the net balance due before the commencement of the action, the plaintiff was entitled to recover the net amount with interest from the commencement of the action. In such case the rule as to an unliquidated claim upon a common count is inapplicable; but the amount recoverable under the express contract was ascertainable by a mere process of subtraction.

ID.—EXCEPTIONS TO RULE AS TO UNLIQUIDATED DEMAND.—Even if the demand be deemed unliquidated, there is an exception to the rule

as to unliquidated demands when, as in this case, the exact sum of the defendant's indebtedness is known to him, and the reason suggested for the denial of interest does not exist.

ID.—REQUESTED INSTRUCTIONS INAPPLICABLE TO EVIDENCE.—Requested instructions which are inapplicable to any evidence adduced in the case were properly refused.

ID.—REQUESTS AS TO INTENTION OF AGENCY AND OF PLAINTIFF TO DEFEAT COUNTERCLAIM PROPERLY REFUSED.—Requested instructions to the effect that if the agency of which plaintiff was business agent, in order to defeat defendant's counterclaim, turned the order over to the plaintiff or any other party to be filled, without the consent of the defendant, it would be entitled to maintain its counterclaim against the agency in the suit of plaintiff for the price of the goods, were properly refused as incorrect in law, as well as inapplicable to the evidence.

APPEAL from an order of the Superior Court of the City and County of San Francisco, denying a new trial. Geo. A. Sturtevant, Judge.

The facts are stated in the opinion of the court.

P. L. Benjamin, for Appellant.

R. M. Sims, for Respondent.

HART, J.—This is an action by plaintiff to recover the sum of $3,509.82, alleged to be due and owing from defendant to plaintiff for certain goods, sold and delivered to the former by the latter. The cause was tried by a jury, by whom a verdict was returned in favor of plaintiff for the sum of $2,808.08. Judgment was entered accordingly.

The defendant prosecutes this appeal from the order denying its motion for a new trial, and complains: 1. That the evidence is insufficient to justify the verdict; 2. That the court erred, to its prejudice, in certain rulings upon questions involving the admissibility of certain testimony; 3. That the court, in its charge, misdirected the jury upon matters of law.

The complaint is in two counts, viz.: The one declaring upon the contract and the second setting up the indebtedness in the form of a common count.

After averring that the defendant, a corporation, is and was, at the time of the commencement of this action and for some time prior thereto, engaged in business in the city of San Francisco, the complaint alleges that "between the thirty-first day of August, 1906, and the twentieth day of November, 1906, at the city and county of San Francisco, plaintiff sold and delivered to defendant, at defendant's special instance and request, certain goods," etc., and then follows an itemized statement of the goods so sold and delivered.

In order that certain averments of and the issues raised by the answer may be the better understood, it should be here stated that it appears that the plaintiff, on receiving from the defendant the order for the goods mentioned in the complaint, purchased the same from a concern known as the Multnomah Lumber and Box Company, and thereupon ordered the latter to ship said goods to defendant, at San Francisco, as direct from himself.

The defendant does not deny or dispute its indebtedness to some one for the goods described in the complaint; but its contention is that plaintiff, in said transaction, was acting only and solely for a corporation named and known as the Northern Box Manufacturers' Agency and, consequently, not for himself in his individual right.

In consonance with this theory, the answer, besides specifically denying the averments of both counts of the complaint, sets up a counterclaim, alleging, in this connection, that the plaintiff and the said Multnomah Lumber and Box Company and a number of other corporations engaged in like business, all said corporations being specifically named in the answer, had, prior to the time at which the transactions upon which this action is founded took place, formed themselves into a corporation under the name of the "Northern Box Manufacturers' Agency," and, under that name, the plaintiff and all said corporations are, and ever since have been, associated together in the transaction of business.

It is alleged that, at the times that the goods mentioned in the complaint were ordered by and sold and delivered to defendant, the plaintiff was secretary and business agent of said Northern Box Manufacturers' Agency, and in such

capacity sold and delivered, for and in behalf of said corporation, the goods described in the complaint.

With respect to the alleged counterclaim, the answer alleges that, on the first day of March, 1906, at the city and county of San Francisco, ''the said parties so as aforesaid associated in business together under the said name of the Northern Box Manufacturers' Agency, as said Northern etc. Agency, entered into a contract in writing with defendant,'' by the terms of which said agency (for brevity we shall hereafter so refer to said last-mentioned corporation) agreed to sell and deliver to defendant 200,000 standard two and one-half pound cases at certain prices specified in said contract; that said agency failed and refused to execute the terms of said contract on its part and that defendant was thereby damaged in the sum of $14,000.

From the foregoing statement of the issue it is to be observed that the *punctum saliens* of the problem submitted by the pleadings for solution by the jury was whether the plaintiff, in the sale and delivery to defendant of the goods referred to in the complaint, was acting for himself or only as the agent of said agency.

In order to support its counterclaim, it was, obviously, necessary for the defendant to establish its theory that plaintiff, in the sale of the goods described in the complaint, was acting for and as the representative of said agency and not for himself, individually, and in attempting to sustain such theory it seems to have confined its evidence almost solely to the proof of its claim, as alleged in the answer, that the Multnomah Lumber and Box Company, from which, as we have seen, plaintiff purchased the goods sold and delivered by him to defendant, was, at the time of such sale and delivery, a component part of, and therefore associated with, said agency in the business of manufacturing and selling the kind of goods described in the complaint. Manifestly, the effect of such proof could only be to establish a fact from which a very strong inference might have been drawn that the plaintiff, in the transaction of which this litigation is the outgrowth, was not operating for himself in his individual capacity but merely representing as manager or agent said agency.

1. In considering whether there is sufficient evidence to support the verdict, it is not deemed requisite to do more than refer to the testimony in this opinion in a general way. The jury found, upon sufficient evidence, as we shall presently perceive, not only by their general verdict but also by their answers to certain particular questions of fact submitted to them by the court, against the theory upon which the defendant undertook to resist the right of plaintiff to maintain this action in his own right. The particular questions of fact so submitted and the answers thereto are as follows:

"1. Did defendant order the goods described in the complaint from A. A. Courteney? Answer: Yes.

"2. Did A. A. Courteney order the goods described in the complaint from the Multnomah Lumber and Box Company? Answer: Yes.

"3. Were the goods ordered from the Multnomah Lumber and Box Company charged by them to A. A. Courteney under the name of Western Veneer and Basket Agency? Answer: Yes.

"4. Did A. A. Courteney pay the Multnomah Lumber and Box Company for the goods described in the complaint? Answer: Yes.

"5. Was the Multnomah Lumber and Box Company associated in business with the Northern Box Manufacturers' Agency and a member of said agency? Answer: No.

"6. Did A. A. Courteney have any connection with the Northern Box Manufacturers' Agency other than as a salaried employee? Answer: No."

Thus it is to be noted that the jury made express findings negativing all the issues of fact essential to the support of defendant's counterclaim.

The evidence, consisting partly of the letters which passed between the plaintiff and defendant, shows that the defendant first addressed a letter to plaintiff, ostensibly not as manager of the agency, asking for quotations on the goods itemized in the complaint; that thereafter considerable correspondence, culminating in the giving of the orders to plaintiff by defendant, passed between the parties; that the letters addressed to defendant relative to the goods by plaintiff were signed by the latter in his own name; that at the time these orders were given and accepted by plaintiff, the agency had

ceased to do business, but that plaintiff, who had been its secretary and manager, remained with the concern until December, 1906, for the sole purpose of winding up its affairs. Plaintiff testified that said agency accepted no new business after July 1, 1906, and in this he was corroborated by the witness, Taylor, who had up to July 1, 1906, acted as a clerk and bookkeeper for said agency under the direction of plaintiff. Plaintiff further testified that he had been engaged in the box shook business for himself since July 1, 1906, and prior to that time had transacted business independently of the agency under the name of the Western Veneer and Basket Company. It was upon the letter-heads of this company that he had carried on the correspondence with defendant relative to the sale of the goods described in the complaint.

Upon receiving the request for quotations on said goods from defendant, plaintiff negotiated with the Multnomah Lumber and Box Company for its prices for the class of goods ordered by defendant, and upon receiving a reply from said company, disclosing said prices, communicated the same to defendant. The latter accepted the quotations thus offered by plaintiff, and ordered the shipment of the goods, and the latter thereupon directed the Multnomah company to ship the goods to defendant.

Plaintiff declared that neither he nor the Multnomah Lumber and Box Company was ever a member of the agency. He further testified that he made payments to the Multnomah company on account of the goods delivered to the defendant.

F. A. Douty, business manager of the Multnomah company, testified that his company had had dealings with the agency, but only as one person with another; that the Multnomah company was never at any time a member of the agency; that the account for the goods in question was kept on his company's books against the Western Veneer and Basket Company "because that is A. A. Courteney." He stated that Courteney made the following payments to his company on account of the goods sold and shipped to defendant: On December 20, 1906, $1,000; January 17, 1907, $53.30; January 23, 1907, $1,000; March 13, 1907, $750.

There is other testimony which corroborates the plaintiff in the statement that the transaction in question was conducted for himself individually, but the foregoing brief

*résumé* of the evidence is regarded as sufficient to disclose that the conclusion reached by the jury, as evidenced by their general verdict as well as by their answers to the particular questions of fact which they were required to answer, is abundantly supported and clearly justified.

As stated, defendant sought to show that the transaction was with the agency principally by proof that the Multnomah Lumber and Box Company was a member of said agency at the time the goods were ordered, sold and delivered. Some testimony was received on behalf of defendant disclosing defendant's prior dealings with plaintiff as the business manager of said agency and the customary manner in which such transactions were prosecuted. The object of such testimony was, of course, to thus prove circumstances tending to establish defendant's contention that, in the transaction involved here, plaintiff was still acting for said agency. But this proof, like that offered and received in support of the claim that the Multnomah company was a part or member of said agency, appears from the record to be exceedingly frail and evidently was so valued by the jury. At any rate, the situation, as presented by the record with regard to the proofs, is such as to bring the case clearly within the rule that must be invoked and applied where a substantial conflict arises in the evidence.

2. The rulings of the court excluding answers to certain questions propounded to the witness, Merillion, manager of defendant, by the latter's attorney, and which rulings are declared to be erroneous, are, in any event, without prejudice. Most of the questions asked were, in effect, whether the witness had any information or knowledge before or at the time the orders were given for the goods and the same were sold and delivered or until a certain letter was received by defendant from plaintiff, dated December 17, 1906, that plaintiff personally and for himself supplied defendant with the goods involved in the controversy. To each of the questions so asked an objection upon the ground that it called for the opinion and conclusion of the witness was sustained by the court. While none of these questions, with a single exception, is, upon its face, amenable to the objection that it called for either the opinion or conclusion of the witness, still, had the court allowed them to be answered, the most that could

have been thereby shown was that, although the defendant conducted the transaction personally with plaintiff, its manager did not know that, in the transaction, the plaintiff was acting for himself in his individual right, but supposed that therein he was only representing, as agent, the Northern Box Manufacturers' Agency. It is plainly apparent that testimony disclosing what the manager of defendant did not himself know or had not learned until a certain time with respect to that matter would have very slight, if, indeed, any, tendency to prove that Courteney was not operating in his own behalf, individually, in the sale of the goods to defendant. Therefore, even though it may rightly be said, in strictness, that the trial court should have allowed answers to some of the questions here referred to, it cannot be held that its refusal to do so could have had the effect of seriously affecting defendant's substantial rights.

3. The complaint urged against the action of the court in the giving, the rejection and the modification of certain instructions is without substantial merit.

We shall not attempt to give all the assignments under this head special consideration. It will be sufficient to say as to most of the objections involving the matter of instructions that a critical examination of the entire charge of the court justifies us in declaring that therein all the principles of law pertinent to the issues as tendered by the pleadings and brought out by the evidence and essential to an intelligent and just consideration by the jury of the whole case as made out by the proofs were, generally speaking, expounded correctly and in language of marked perspicuity.

We shall, however, particularly notice a few of the very many objections against the action of the court in this regard. The most serious of these, in our opinion, is the objection involving the attack upon the following instruction given by the court: "You are instructed that A. A. Courteney is a separate and distinct person from the Northern Box Manufacturers' Agency, and if you find that the letters from the Northern Box Manufacturers' Agency relative to the contract of March 1, 1906, were signed 'Northern Box Manufacturers' Agency, By A. A. Courteney, Manager,' they were the letters of the Northern Box Manufacturers' Agency and not the letters of Mr. Courteney; and if you find that the letters rela-

tive to the sale of the goods described in the complaint were signed 'A. A. Courteney,' and there was nothing in the letters indicating that they were signed by A. A. Courteney for the Northern Box Manufacturers' Agency, such letters are the letters of A. A. Courteney and not the letters of the Northern Box Manufacturers' Agency.''

The foregoing part of the court's charge is criticised as involving an instruction to the jury upon a question of fact and, while the criticism is well founded, we think the error, in view of the evidence, is without prejudice.

It cannot be said, as a matter of law, because the letters passing from plaintiff to defendant relative to the sale of the goods were signed by him without indicating by express words that in said transaction he was representing said agency as its agent, that he was not so acting for that corporation, but that from such manner of signing his name he was conducting the transaction solely for himself or in his individual capacity. In other words, it does not necessarily follow, either as a matter of fact or as a matter of law, that the plaintiff was, in said transaction, acting solely for himself merely because he signed his own instead of the name of the agency to the letters addressed by him to defendant relative to the sale of the goods. The letters referred to were, as a matter of fact, signed by Courteney apparently in his individual capacity—that is, they were signed by him apparently not as manager of the agency, nor in any other manner indicating that they were written by him as an official of that corporation—but the fact that they were so signed constituted only a circumstance supporting the theory upon which plaintiff instituted this action, and clearly it was for the jury, and not for the court, to determine its probative value. Neither, on the other hand, would it have been conclusive proof or true as a matter of law that plaintiff was acting for the agency had he signed his name to the letters as its agent or manager.

But, as stated, we cannot perceive how the instruction could, in view of the evidence, have exercised a substantial or any significant influence on the jury in their deliberations upon their verdict. As before shown, the efforts of the defendant to establish its claim that, in the purchase of the goods described in the complaint, it was not dealing with plaintiff as an individual, were almost entirely directed to proof of the

16 Cal. App.—39

connection, as a business associate, of the Multnomah company with said agency, and in this defendant signally failed to establish its contention. Indeed, the only testimony upon that vital point of the controversy worthy of characterization as testimony came from plaintiff's side, and thereby it seems to have been directly and positively shown that neither the Multnomah company nor plaintiff himself was a member of the agency, but that the former had never had any connection therewith as a business associate. In short, apart from proof of the fact—in truth, of the admission of the plaintiff himself —that the latter was secretary and business agent of the agency, and the further fact that defendant had had dealings with the agency while plaintiff was its manager, there is not a circumstance or fact developed by defendant from which the jury would have been warranted in inferring that the plaintiff, in the sale of the goods, was acting for the agency.

The testimony of the plaintiff was, as we have seen, that the agency had absolutely nothing to do with the sale of the goods. The testimony of the manager of the Multnomah company was, as likewise has been seen, that plaintiff bought the goods from his company, that they were charged against plaintiff, that the latter made certain payments thereon, and that said company had no connection at that or any other time with the agency. As stated, this testimony stands in the record without the slightest contradiction, affirmatively. Thus it is to be seen that the manner of the signing of the letters by plaintiff is in perfect harmony with the apparently uncontroverted testimony that the transaction, on plaintiff's part, was conducted by him for himself and not for the agency.

Upon the record as thus outlined, the question with the jury was not, whether it had been shown that plaintiff did not act for himself but for the agency, for, as seen, there was no affirmative showing which would justify such inquiry, but whether the testimony directly showing that he was acting for himself and not as a representative of the agency was to be believed. If the jury believed plaintiff and the manager of the Multnomah company, as manifestly they did, then there was no other verdict that they could have justly returned than the one to which exceptions are here interposed. In other words, the only evidence affirmatively brought to

their attention upon the vital issue submitted here was that
produced by plaintiff in support of his contention, and the
verdict must necessarily have been for plaintiff *on* that *evi-
dence* or for defendant because said evidence was *lacking in
the power of persuasion.* As suggested, if that evidence dis-
closed the truth of the transaction, then the letters addressed
by plaintiff to defendant were written as his (plaintiff's) in-
dividual letters. Under the foregoing analysis of the evi-
dence, the instruction under review, though, strictly speak-
ing, erroneous, could not, in our opinion, have operated
prejudicially against the defendant.

Where, as here, the evidence supporting the verdict appears
to stand without substantial contradiction, the verdict thus
reached should not be set aside because of an instruction
which, though erroneous for dealing with a question of fact,
contrary to the mandates of the constitution, accords per-
fectly with such evidence. In other words, where, as in the
case in this instance, the instruction states as a matter of
law what the evidence, without apparent contradiction, dis-
closes as a matter of fact, it cannot be held by this court,
that, on such a state of the record, a different verdict would
have been returned but for such erroneous instruction.

The instruction is further condemned because it declares
that "A. A. Courteney is a separate and distinct person from
the Northern Box Manufacturers' Agency," the claim being
that thus the jury were in effect told that Courteney, in
writing the letters to the defendant concerning the transac-
tion, was not acting for said agency. We do not so under-
stand that language of the instruction. By the instruction
the court undoubtedly intended only to declare as a matter
of law what is certainly true as a matter of fact, that Courte-
ney, as an individual, is a separate and distinct person from
the agency, a corporation, and that, as an individual, he had a
right to do business for himself, notwithstanding his official
connection with said corporation. The antithesis of this prop-
osition would obviously not be true or correct either as a
matter of law or of fact. If the court had said that "A. A.
Courteney, as *agent* or *manager of said agency* and said
agency were separate and distinct persons," the criticism of
the instruction would then have been just and well founded;

but the instruction does not so declare and could not have been so understood by the jury.

The court very properly instructed the jury that, unless they found that the plaintiff, in the sale of the goods, acted for the agency, they should "disregard all testimony with respect to any dealings it may have had with defendant and of any suit defendant may have brought and maintained against said agency." Said instruction had particular reference to the counterclaim set up by defendant. The only theory, admittedly, upon which the counterclaim could have been sustained was, as seen, that the plaintiff conducted the transactions involved here as agent and on behalf of said Box Manufacturers' Agency, and, unless that fact could be shown, evidence addressed to the proof of the counterclaim pleaded by defendant was very clearly entitled to no consideration whatever by the jury in the determination of what their verdict should be. There was and is no claim that plaintiff, as an individual, had any connection with the transactions from which the alleged counterclaim arose. Of course, it was for the jury to first ascertain and determine whether the real party in interest in the action was said agency or plaintiff himself, and if, as obviously they did, they found that the agency had nothing to do with the transactions on which this action is based, why should they give consideration to an irrelevant and immaterial issue?

The court did not take from the jury by this or the instruction just previously considered the right and the duty of determining the question of fact whether the agency or the plaintiff was the party with whom defendant had the dealings which constitute the subject of this action.

It is further contended, with seeming earnestness, that the instruction as to the interest to which the court conceived the plaintiff would be entitled on any verdict or judgment which might properly be awarded him under the evidence involves a misapplication of the law in that respect, the contention being that, because of the nature of the contract between the parties, the plaintiff was entitled to no interest at all.

The contract stipulated that the freight charges for the transportation of the goods from Portland to San Francisco were to be paid by defendant upon receipt of the same, and

were to be deducted from the gross price of said goods. The evidence disclosed—in fact it was practically admitted, as Beardsley, secretary of defendant, so testified—that the gross sum for the goods, at the prices quoted to defendant by plaintiff, amounted to $3,590.82, and the amount of the freight charges, paid by the defendant, was $782.74, leaving as due the plaintiff the sum of $2,808.08, the sum awarded by the jury.

The court instructed the jury upon the question of interest as follows: "The situation is that the amount of the goods furnished figured up to $3,590.82, the amount of freight was $782.74, which, being deducted from the price of the goods, leaves $2,808.08. If you should find that A. A. Courteney, in the light of other instructions which I shall give you, is entitled to recover as plaintiff in this case, he will be entitled to recover that sum, $2,808.08, and also interest from the date of the commencement of this action, November 27, 1906."

The argument urged against said instruction or the allowance of interest upon the amount awarded by the jury is that the claim of plaintiff constituted an uncertain and unliquidated demand, made so by the fact that the sum to be deducted on account of freight charges, to be paid by defendant, from the gross sum or price for which the goods were sold, could not be ascertained from the contract itself; that the defendant was entitled to a reduction for reasonable freight charges only, or such charges as the jury might determine from all the evidence were reasonable, although such finding might be for an amount below that actually paid by defendant. Hence, it is pointed out, the court erred in allowing interest, and in support of the proposition so advanced the following cases are cited: *Bradly* v. *Wilcoxson*, 44 Cal. 245; *Coburn* v. *Goodall*, 72 Cal. 509, [1 Am. St. Rep. 75, 14 Pac. 190] ; *Cox* v. *McLaughlin*, 76 Cal. 60, [9 Am. St. Rep. 164, 18 Pac. 100] ; *Ferrea* v. *Chabot*, 121 Cal. 237, [53 Pac. 689, 1092] ; *Erickson* v. *Stockton & T. C. R. Co.*, 148 Cal. 206, [82 Pac. 961] ; *MacComber* v. *Bigelow*, 123 Cal. 535, [56 Pac. 449] ; and *Swinnerton* v. *Argonaut L. & B.*, 112 Cal. 379, [44 Pac. 719].

But it will be found, upon an examination of these cases, that, in each instance, the action was upon a *quantum valebat*

or a *quantum meruit* for the recovery of the reasonable value of goods sold and delivered or services rendered, and they are, therefore, not in point.

In the case at bar, the prices for the goods sold and delivered to defendant and accepted by it were definitely fixed and agreed upon in the contract and the time for payments definitely fixed and specified. The amount, if any, to which the plaintiff was entitled as compensation for these goods was capable of being readily made certain (if, indeed, it was not already certain or liquidated within legal contemplation), by the ascertainment, by the simple process of subtraction, of the difference between the gross sum for which, under their agreement, the plaintiff furnished and the defendant accepted the goods and the total amount paid by defendant for freight charges. It is, of course, idle to argue, under the circumstances disclosed by this record, that the freight charges, so far as the amount thereof was concerned, were subject to determination by the jury upon evidence disclosing whether such charges were reasonable or unreasonable. Whatever sum was actually paid by defendant for such charges was precisely known to the latter, and, therefore, easily and readily ascertainable, and the sum so paid would represent the sum to be deducted from the gross sum for which the goods were sold. The jury could not, without exercising the most arbitrary and unwarranted power, find a sum less than that actually paid. Indeed, the question whether the sum so paid was reasonable could not arise, since the plaintiff himself shipped the goods and selected the route and manner of such shipments, and thus himself virtually regulated the charges therefor.

But, conceding for the purposes of the case that the claim or demand upon which the complaint declares is, in a sense, unliquidated in that the amount precisely due must be ascertained by arithmetical calculation, yet the proposition that interest is allowable thereon is still unimpeachable. It is thoroughly settled by the authorities in this as well as in other jurisdictions that while, as a general rule, interest may not be allowed on unliquidated claims, there are, nevertheless, exceptions thereto. The reason of the denial of interest on such demands "is said to be that the person liable does not know what sum he owes, and, therefore, can be in no

default for not paying." (*Cox* v. *McLaughlin*, 76 Cal. 67, [9 Am. St. Rep. 164, 18 Pac. 100].) When, therefore, as is the case here, the exact sum of defendant's indebtedness is known to him, the reason suggested for the denial of interest does not exist.

In the case last cited it is said: "We are not prepared to say, in general terms, that no interest in any case can be recovered in an action upon contract for an unliquidated demand. *Mix* v. *Miller*, 57 Cal. 356, decided since the adoption of the code, and *McFadden* v. *Crawford*, 39 Cal. 662, decided previously, attest the doctrine that in this state interest is allowable on such demands under some circumstances. These were cases in which the contract had been fully performed by the creditors, the fruits thereof accepted by the debtors, without objection, and they were clearly in default, and in the latter case the only question was as to value." The foregoing language is quoted approvingly in the case of *Easterbrook* v. *Farquharson*, 110 Cal. 317, [42 Pac. 811]. (See full and interesting discussion of this subject in all its phases in the leading case of *Selleck* v. *French*, 1 Conn. 32, 6 Am. Dec. 185, and the footnotes in the last-mentioned volume.)

Therefore, if it may be held that the claim which is the basis of this action constitutes, strictly speaking, an unliquidated demand, still we think that there is no possible ground for doubting that this case comes clearly within the exceptions pointed out by the cases above referred to.

It follows, from the foregoing views, that whether interest has been allowed upon the theory that compensation is thus awarded plaintiff for the use of his money, past due (Civ. Code, sec. 1917), or as damages for defendant's wrongful withholding of said money from plaintiff (Civ. Code, sec. 3287), in either case the allowance was perfectly proper and the instruction of the court upon that subject, therefore, so far as defendant is concerned, without prejudice. Indeed, although the question is not presented here for decision, it may be suggested that it might well be claimed, under the circumstances of this case, that the plaintiff was entitled to interest from the date that the money became due, in which case he and not the defendant would be the sufferer from the instruction and the verdict on the score of interest.

It is further objected that the court committed prejudicial error by its disallowance of an instruction, requested by the defendant, that would have told the jury, in effect, that, if the defendant intended the orders in question to be for the agency, and that plaintiff at the time said orders were given knew such to be the fact, the agency, in order to defeat defendant's right to offset its counterclaim against the agency, could not, without the consent of defendant, turn said orders over to the Multnomah Lumber and Box Company or any other party to be filled; that if, under the circumstances as thus indicated, the agency did turn the orders over to the said Multnomah company and they were filled by "Courteney or the Multnomah Lumber and Box Company, the defendant has the right to set off against the price for the goods supplied under those orders whatever amount may be due it from the . . . agency for any loss suffered by defendant through the failure of the . . . agency to carry out any contract it might have had with the . . . agency for the furnishing of boxes."

Several other instructions involving the enunciation in a different form of the same proposition were also requested by the defendant and rejected by the court. These instructions were properly refused, for the reason that there was adduced no evidence to which they were applicable. We have found no testimony in the record which discloses that the intention of the defendant was that the orders should be filled by the agency, with the exception that a possible inference might be deduced that the defendant so intended from the fact that it had previously had transactions of a similar character with the agency through plaintiff as the agency's manager; but such inference, at best, would manifestly amount to nothing more than a mere conjecture. Nor does there appear to have been any serious effort made by defendant to show its intention in that regard. It is true that its counsel asked its business manager what his "understanding" was with respect to the person with whom it was transacting the business concerned here, but had the court permitted an answer to that question and such answer had been favorable to defendant, as undoubtedly it would have been, the *intention* of the defendant would not thus have necessarily been shown. And, assuming that defendant would thus have shown its

intention to have been to deal with the agency, and even going further, supposing that it had been shown, as it was not, that the agency received the orders and then turned them over to plaintiff to be filled, there is nothing to disclose its purpose or motive in doing so, except the bare inference that might possibly be drawn from the fact that the defendant held against the agency an alleged claim for damages which defendant might have maintained as a setoff to the price of the goods in question.   But the only tangible evidence from which the intention of the defendant on the subject referred to may be presumed consists of the letters addressed by it to plaintiff relative to the sale of the goods, and, as we have seen, those letters were so addressed to plaintiff ostensibly as an individual and not as a representative of the agency.

Moreover, we do not conceive nor concede it to be true, as a legal proposition, that if the agency, in order to defeat defendant's counterclaim, turned the orders over to Courteney or to any other party, to be filled, without the consent of the defendant, the latter would, nevertheless, be entitled to interpose and maintain its counterclaim against the agency in a suit by Courteney (or such other party) for the price of the goods, unless it could be shown that Courteney (or other party) did not act in good faith in the matter or that the agency itself was interested in the goods so shipped or the money which might become due thereon.

If, in other words, A should order goods from B, and the latter, for whatsoever reason, should turn the order over to C without the express consent of A, and C in good faith fills the order by shipping to A goods in which B has no interest, and A accepts the goods, we know of no reason or principle which would preclude a recovery by C of the price of the goods free from any setoff or counterclaim A might have against B, even though it might transpire that C knew, at the time the contract was so transferred to him, that the motive of B in transferring the contract was to escape the consequences of a plea and proof of a counterclaim against him in the event that it became necessary to institute an action to recover the price of the goods from A.   C might not, under such circumstances, be able to sustain a declaration for the price of the goods so supplied on an express contract, his mind and that of A not having by express terms come to-

gether on or concurred in the proposition; still, since A had accepted the goods and so enjoyed the fruits of the transaction, C could certainly recover the reasonable market value of the goods upon an implied assumpsit or a *quantum meruit*, and in such case the plea of the counterclaim against B could not be sustained.

We have now considered such criticisms of the action of the court in the matter of instructions as we deem worthy of special notice. As before stated, every legal principle pertinent to the issues tendered by the pleadings and presented by the evidence was declared to the jury in clear language and correctly.

After a thorough examination of the record as well as the briefs of appellant, the latter embracing, in the aggregate, one hundred and ninety-two printed pages, we have been unable to discover any error in the trial of the cause or in the result thereof for which a reversal of the order would be justified.

The order is therefore affirmed.

Burnett, J., and Chipman, P. J., concurred.