[No. B197971. Second Dist., Div. Four. Sept. 24, 2008.]

CRUZ CARDENAS RAEL, Plaintiff and Appellant, v.
DAVID M. DAVIS, Defendant and Respondent;

[No. B200217. Second Dist., Div. Four. Sept. 24, 2008.]

CRUZ CARDENAS RAEL, Plaintiff and Respondent, v.
DAVID M. DAVIS, Defendant and Appellant.

▮▮▮▮▮

▮▮▮▮▮▮▮▮▮

**COUNSEL**

Tyre Kamins Katz & Granof, Leah Phillips Falzone; Palarz & Williams and Herman S. Palarz for Plaintiff and Appellant and for Plaintiff and Respondent.

Brown and Associates and Matthew C. Brown for Defendant and Respondent and for Defendant and Appellant.

---

**OPINION**

**MANELLA, J.—**

## INTRODUCTION

In consolidated appeals, plaintiff/appellant Cruz Cardenas Rael contends the trial court erred in excluding as inadmissible a document prepared in the course of a mediation, and finding the purported agreement unenforceable as not signed by all parties.[1] She contends that promises made by one of the parties to the agreement were severable and separately enforceable. In his appeal, defendant/respondent/appellant David M. Davis contends that the trial court erred in refusing to award attorney fees pursuant to Civil Code section 1717.

We conclude that the trial court did not err in excluding the agreement and finding it unenforceable. We thus affirm the judgment. We also affirm the trial court's denial of attorney fees, as no statutory exception to mediation confidentiality permits application of Civil Code section 1717.

## BACKGROUND

### 1. *The Pleadings*

In 2005, Cruz Cardenas Rael commenced this action for breach of contract against Davis as the executor of the estate of her deceased husband, Tony G. Rael, Jr., and as the successor trustee of the Rael Family 1993 Inter Vivos Trust.[2] The complaint alleged that Tony G. Rael, Jr., died in 2003, and that prior to his death, he participated in a mediation regarding the distribution of

---

[1] Although the court found no enforceable agreement resulted, both parties refer to the document at issue as the "settlement agreement," and we do so occasionally as well.

[2] Before bringing this action, Cruz Cardenas Rael sought declaratory relief in the probate court, and obtained a determination that the filing of a civil action to enforce the terms of the mediated settlement agreement would not violate the no contest provisions in the will and

his assets after his death with Cruz Cardenas Rael and Tony's children—Mark Rael, Julianne Christina Rael-Duch and Yolanda Southern.[3] On April 24, 2002, the mediation allegedly resulted in a settlement, memorialized in a written settlement agreement. It was alleged that under the settlement agreement, Tony promised to exercise his power of appointment in favor of Cruz, so that she would receive one-third the assets of his estate, rather than the bequests given to her under Tony's preexisting will and living trust. The complaint alleged that Tony breached the agreement by failing to amend the trust instrument in the manner promised. The complaint alleged that on March 12, 2004, Cruz filed a creditor's claim, and served the claim on Davis, the executor of Tony's will and successor trustee of the trust, but Davis failed to abide by the terms of the alleged written contract. The complaint prayed for damages equal to one-third the estate's assets, due to Tony's alleged breach of contract, and for costs and attorney fees.

In his answer to the complaint, Davis denied the formation and enforceability of the alleged settlement agreement or any obligation under it, and objected to the discovery and admissibility of the agreement pursuant to Evidence Code section 1119.[4]

## 2. *The Court's Findings of Fact*

The case was tried October 23, 24 and 25, 2006, and the court filed its statement of decision January 12, 2007. Because the court filed a statement of decision and Cruz does not contend the evidence is insufficient to support the trial court's findings, we are bound by the court's factual findings set forth in the statement.[5] We therefore quote them at length.

"Plaintiff in this matter is the surviving spouse of the now deceased Tony G. Rael, Jr., having married him on June 13, 2000 and having been widowed by him on March 12, 2003. [¶] Tony G. Rael, Jr., was also survived

---

trust. (*Estate of Rael* (Super. Ct. L.A. County, 2004, Nos. GP009464, BP080564).) The court's orders were affirmed on appeal. (*Estate of Rael* (June 1, 2005, B175075, B175077) [nonpub. opn.].)

[3] To avoid confusion, we refer to the members of the Rael family by their first names, except when quoting the trial court's use of full names, and to Julianne Christina as "Tina," as did the parties at trial. Because these are consolidated appeals, and Cruz and Davis are both appellants and respondents, we refer to them by name, rather than as appellant and respondent.

[4] Evidence Code section 1119 prohibits admitting in later civil proceedings all communications made in relation to mediation. All further statutory references are to the Evidence Code, unless otherwise indicated.

[5] See *Peat, Marwick, Mitchell & Co. v. Superior Court* (1988) 200 Cal.App.3d 272, 277–278 [245 Cal.Rptr. 873]. Further, we presume the record contains sufficient evidence to sustain each finding of fact. (*Foreman & Clark Corp. v. Fallon* (1971) 3 Cal.3d 875, 881 [92 Cal.Rptr. 162, 479 P.2d 362].)

by his three children, Mark Rael, Julianne Christina Rael-Duch and Yolanda Southern, all from Tony G. Rael, Jr.'s prior wife who predeceased him.

"Prior to the death of Tony G. Rael, Jr., and more specifically on February 7, 2002, Mark Rael initiated a legal proceeding for conservatorship of the estate and person of Tony G. Rael, Jr. in the Central District of the Los Angeles Superior Court under [Los Angeles Superior Court] case number BP 071693 (the 'Conservatorship Matter').[6] [¶] . . . [¶] As a result of the initiation of the Conservatorship Matter, Tony G. Rael, Jr. and Mark Rael were ordered by the Court in the Conservatorship Matter to participate in a mediation.

"Four mediation sessions took place pursuant to the order by the Court in the Conservatorship Matter, on the following dates: March 08, 2002; March 25, 2002; April 8, 2002 and April 24, 2002. [¶] All the mediation sessions which took place pursuant to the aforementioned order were mediated by Richard Hirrel. [¶] Various people participated in the four mediation sessions, including the following: Tony G. Rael, Jr., each of his three children, Plaintiff, Muriel Avina (daughter of Plaintiff), Susan House (legal counsel for Tony G. Rael, Jr.) Ruth Phelps (legal counsel for Mark Rael) and James Helms (legal counsel for Plaintiff). [¶] On March 8, 2002, all of the aforementioned mediation participants signed a Retainer Agreement for Confidential Mediation applicable to all the mediation sessions.

"Mark Rael was not physically present at the last of the four mediation sessions, which took place on April 24, 2002. [¶] Tony G. Rael, Jr., Julianne Christina Rael-Duch, Yolanda Southern and Plaintiff signed a proposed settlement agreement document prepared at the April 24, 2002, mediation session on that day, which was also signed by Susan House, Ruth Phelps and James Helms. [¶] Mark Rael never signed any document prepared at the April 24, 2002, mediation session.

"Following the April 24, 2002, mediation session various letters were exchanged between legal counsel for the mediation participants, including a letter dated May 13, 2002, from Susan House to Ruth Phelps, written at the request of Tony G. Rael, Jr., wherein Susan House wrote as follows:

" 'Dear Ruth:

" 'It has now been almost three weeks since our last mediation when everyone but your client, Mark Rael, signed the Settlement

---

[6] The trial court took judicial notice of documents and other matters in the conservatorship proceeding, filed in the Los Angeles Superior Court case *Conservatorship of Rael* (Super. Ct. L.A. County, 2003, No. BP071693). In that matter, Mark petitioned to be appointed Tony's conservator. Tony opposed the petition and nominated Cruz, whom the court appointed as conservator of Tony's estate and person.

Agreement. Although you and I have spoken on several occasions, you have described your client's wishes and I have tried to respond, no progress has been made.

" 'We have discussed the situation with our client. We have explained to him the demands being made by Mark and the uncertainty surrounding the resolution of the conservatorship controversy caused by the conditional nature of the signatures given on April 24 and your client's refusal to sign. In light of all this, we have been instructed to inform you that unless Mark Rael signs the Settlement Agreement as it was signed by everyone else on April 24 by the close of business on Wednesday, May 15, there is no settlement and we will proceed to prepare for trial on July 15. By copy of this letter we are instructing Mr. Hirrel to destroy the original Settlement Agreement[] in his possession unless your client signs by the close of business on Wednesday.

" 'We regret to have to proceed on this basis, but we see no alternative. We will need at least 60 days to prepare for trial, and we must proceed as quickly as possible.

" 'Very truly yours,
" '/s/
" 'Susan T. House

" 'Cc:   Tony G. Rael
" 'James Helms
" 'Richard G. Hirrel'

"Susan House's above quoted May 13, 2002, letter was sent to Ruth Phelps on May 13, 2002. [¶] A copy of Susan House's above quoted May 13, 2002, letter was also sent or delivered to Plaintiff's counsel, James Helms, and the mediator, Richard Hirrel, on May 13, 2002.

"Tony G. Rael, Jr., Mark Rael and Plaintiff all participated in the August 7, 2002, trial. [¶] Tony G. Rael, Jr. was represented by legal counsel from the law firm of Hahn & Hahn at the August 7, 2002 trial in the Conservatorship Matter, and Plaintiff was represented by her lawyer, James Helms, at the August 7, 2002, trial in the Conservatorship Matter. [¶] The August 7, 2002,

trial in the Conservatorship Matter resulted in the appointment of Plaintiff as conservator of the person and estate of Tony G. Rael, Jr.

"After the first two mediation sessions but prior to the last two mediation sessions, Tony G. Rael, Jr. executed several estate planning documents, including (a) a will date[d] March 29, 2002, (b) an exercise of power of appointment dated March 29, 2002, and (c) a trust amendment dated March 29, 2002. [¶] The aforementioned will, exercise of power of appointment and trust amendment were all prepared for Tony G. Rael, Jr. at his request by his legal counsel, Susan House, and were all executed by Tony G. Rael, Jr. in her presence on March 3, 2002.

"Plaintiff was named as a beneficiary in the aforementioned will, exercise of power of appointment and trust amendment. [¶] Specifically, Tony G. Rael, Jr. left the following benefits to Plaintiff pursuant to the terms of the March 29, 2002, estate planning documents: (A) his liquor store business, including the liquor license associated with that business, (B) a right to occupy space in one of his properties in order to operate the liquor store for two years from the date of his death on a rent free basis, and (C) up to $100,000 to pay off the balance of the Plaintiff's mortgage on her personal residence, as of the date of his death. [¶] The remainder of Tony G. Rael, Jr.'s assets were left equally to his three children, Mark Rael, Julianne Christina Rael-Duch and Yolanda Southern.

"After the death of Tony G. Rael, Jr., and specifically on August 25, 2005, Plaintiff filed an unverified complaint in this matter alleging that her deceased husband, Tony G. Rael, Jr., had entered into a written contract with her at the April 24, 2002, mediation session, and that he breached the alleged written contract, causing her to suffer damages.

"Plaintiff alleged that the assets in Tony G. Rael, Jr.'s trust and probate estate, as of the date of his death, were valued at $6,330,967.93, and that she was entitled to one third of those assets, rather than the bequests given to her under the terms of the aforementioned March 29, 2002, estate planning documents. . . ."

### 3. *The Court's Conclusions*

The court found "highly credible and compelling" the testimony of Tony's attorney, Susan House, that neither she nor Tony intended him to be bound by the terms of the document prepared at the April 24 mediation session unless his son Mark also signed it. House's letter of May 13 confirmed that Tony's consent to the terms set forth in the document was conditioned upon the assent by all other parties, including Mark. Had counsel for either Mark or

Cruz taken a different view, the court reasoned, either or both would have promptly communicated such disagreement to House. The court found it had been Tony's understanding that unless all parties signed the document prepared on April 24, there was no agreement.

The court also considered the testimony of Mark's attorney, Ruth Phelps, who testified unequivocally that she had no authority to bind her client to the agreement or to waive mediation confidentiality, and that her signature on the agreement was not intended to substitute for his.[7] Further, both Tina and Yolanda testified that they never intended to waive confidentiality, or to be bound by any of the terms of the mediation agreement unless Mark signed it. The court concluded that when Tony and his daughters executed the April 24, 2002 document, they did so with the understanding that it would not become operative until all parties signed it, including Mark.

The court rejected Cruz's testimony that Tony told her before his death that he and Cruz would be separately bound by the terms of the document, even if not signed by the other parties. The court found that Cruz's testimony was not credible, and that it was contradicted by her own deposition testimony.[8] The court also considered the pleadings in the conservatorship matter, the testimony of the attorneys for Tony and Mark, and the conduct of all the parties to the mediation after April 24, 2002.[9] The court concluded that neither Tony, Mark nor any of the participants in the April 24 mediation session believed the document prepared on that date constituted an agreement.

The court further concluded that because there was no binding agreement, the term of the April 24 document waiving confidentiality never took effect and the document was inadmissible as evidence. Thus, the court held, Davis was not obligated to perform any term of the document as Tony's executor and successor trustee.

### 4. *Judgment and Appeal*

The court entered judgment in favor of Davis January 29, 2007. The court awarded costs to Davis as the prevailing party, but not attorney fees. Cruz's

---

[7] Also received in evidence was a May 2, 2002 letter from Phelps to House, expressing her belief (consistent with House's letter of May 13) that the document prepared April 24 was a proposal, and would not become binding unless signed by all parties, including Mark.

[8] Read into evidence during cross-examination, her testimony was that everyone's signature was required "so that we all agreed. We all had to sign."

[9] In the conservatorship proceeding, both Cruz and her counsel represented that nothing was accomplished at the April 24, 2002 mediation session, and that it had been an " 'exercise in futility.' "

motion for new trial was denied April 2, 2007, and Davis's motion for attorney fees under Civil Code section 1717 was denied May 18, 2007. Cruz timely filed a notice of appeal from the judgment, and Davis timely filed a notice of appeal from the denial of his motion for attorney fees. The two appeals have been consolidated.

## DISCUSSION

### 1. *Standard of Review*

Cruz contends that a de novo standard of review applies to her appeal, because it involves the construction of contracts and statutes. We agree that the interpretation of a statute is a question of law that we consider de novo on appeal. (*Burden v. Snowden* (1992) 2 Cal.4th 556, 562 [7 Cal.Rptr.2d 531, 828 P.2d 672].) Further, we review the trial court's conclusions of law de novo. (*Continental Ins. Co. v. Superior Court* (1995) 32 Cal.App.4th 94, 108 [37 Cal.Rptr.2d 843].) Where the evidence is not in conflict, the appellate court independently interprets the language of a written contract. (*Parsons v. Bristol Development Co.* (1965) 62 Cal.2d 861, 865–866 [44 Cal.Rptr. 767, 402 P.2d 839].)

Davis contends that a substantial evidence review is appropriate here. However, because Cruz does not contend that the trial court's factual findings are unsupported by substantial evidence, we are bound by them and do not review the evidence. (*Peat, Marwick, Mitchell & Co. v. Superior Court, supra,* 200 Cal.App.3d at pp. 277–278.) Instead, we accept the facts set forth in the statement of decision, and determine whether those factual findings support the judgment as a matter of law. (*City of Merced v. American Motorists Ins. Co.* (2005) 126 Cal.App.4th 1316, 1322 [24 Cal.Rptr.3d 788].)

### 2. *Contentions*

Cruz contends the court erred in requiring that she prove the agreement was enforceable against all parties to the mediation as a condition to its admissibility. She contends the court erred in excluding the April 24, 2002 document, and in finding that no enforceable agreement existed between herself and Tony. Cruz claims that Tony's obligation under the mediation agreement was severable and separately enforceable against Tony, and that Mark's signature was unnecessary to her separate contract with Tony. She argues that the court unnecessarily determined that no contract was formed by all the parties to the mediation, when the sole issue she presented was whether a separate contract was formed between herself and Tony.

Cruz recognizes that because Mark did not sign the mediation agreement, he is not bound by it as a settlement of the underlying dispute,

and she does not contend that the signature of Mark's attorney was sufficient for that purpose.[10] Cruz cites the rule that "in the absence of a showing that the contract is not intended to be complete until signed by all parties, the parties who did sign will be bound." (*Angell v. Rowlands* (1978) 85 Cal.App.3d 536, 542 [149 Cal.Rptr. 574].) Thus, the signatories resisting enforcement of the contract bear the burden to establish "that the signatures of all parties were contemplated as being a condition precedent to the validity of the contract [citation]." (*Id.* at p. 541.) Cruz contends that the court erred in admitting parol evidence of the parties' subjective intent to prove such a condition precedent. Cruz does not dispute the principle asserted by Davis— that an agreement or stipulation that no party shall be bound by a contract unless all parties sign it—may be proven by parol. (See *Cavanaugh v. Casselman* (1891) 88 Cal. 543, 549–550 [26 P. 515].) However, she contends that such parol evidence must consist of an objective manifestation of the agreement or stipulation that Tony would not be obligated to Cruz absent the signature of all parties, including Mark's.[11] Finally, she asserts that the parties' testimony concerning their beliefs did not objectively manifest an agreement not to be bound without the signature of all parties.[12] (See *Angell v. Rowlands, supra*, 85 Cal.App.3d at p. 541.)

Davis notes that the court rejected Cruz's testimony that Tony told her that she and he had a contract regardless of the others' signatures. Cruz suggests that because she requested a finding that the agreement contained severable, independent covenants, the court should have examined the agreement before rejecting this evidence.[13] To do that, she argues, the court should have considered, as a threshold issue, the admissibility of the mediation agreement under section 1119. For the court and Davis to have done otherwise, Cruz contends, was to put the "cart before the horse."

---

[10] " ' "[T]he law is well settled that an attorney must be specifically authorized to settle and compromise a claim, that merely on the basis of his employment he has no implied or ostensible authority to bind his client to a compromise settlement of pending litigation. . . ." ' [Citation.]" (*Levy v. Superior Court* (1995) 10 Cal.4th 578, 583 [41 Cal.Rptr.2d 878, 896 P.2d 171].)

[11] "Contract formation is governed by objective manifestations, not subjective intent of any individual involved. [Citations.] The test is 'what the outward manifestations of consent would lead a reasonable person to believe.' [Citation.]" (*Roth v. Malson* (1998) 67 Cal.App.4th 552, 557 [79 Cal.Rptr.2d 226].)

[12] When a party claims that none should be bound unless all signed the contract, "the language used by the parties is to be considered in the light of the surrounding circumstances and of the practical and mutual construction placed thereon as shown by their acts and conduct before any controversy has arisen between them. [Citation.]" (*Kaneko v. Okuda* (1961) 195 Cal.App.2d 217, 225 [15 Cal.Rptr. 792].)

[13] When a court fails to make a requested finding on a material issue, the omission is harmless, unless the evidence is sufficient to sustain a finding in favor of the requesting party, and such evidence would have the effect of countervailing or destroying other findings. (*Kazensky v. City of Merced* (1998) 65 Cal.App.4th 44, 67–68 [76 Cal.Rptr.2d 356].)

Davis contends that the uncontradicted testimony of Tony's counsel established that neither she nor Tony intended to waive the confidentiality provisions of section 1119 unless Mark signed the April 24, 2002 document. This intent was further shown by evidence that Tony did not intend *any* agreement to come into effect unless all parties, including Mark, signed the document. Because Mark did not do so, no agreement—and no waiver contained in it—ever came into existence.

Although Davis agrees with the trial court's determination that the document was not admissible, he contends the court erred in denying his motion for attorney fees pursuant to the attorney fee provision contained in it. He asks that—for purposes of enforcing the attorney fee provision of the mediation agreement under Civil Code section 1717—Cruz be judicially estopped from claiming the agreement is inadmissible.

### 3. *Mediation Confidentiality*[14]

■ We agree that the admissibility of the mediation agreement must precede the issue of enforceability. "[A] settlement agreement drafted during mediation must be admissible before a court can reach the issue of enforceability." (*Fair v. Bakhtiari* (2006) 40 Cal.4th 189, 199 [51 Cal.Rptr.3d 871, 147 P.3d 653] (*Fair*).) Further, before the court determines whether a term is severable from the agreement and separately enforceable, the agreement must be admissible. (*Ibid.*)

■ "Documents prepared for purposes of mediation are generally inadmissible in civil proceedings." (*Fair, supra,* 40 Cal.4th at p. 191, quoting § 1119, subd. (b).) However, a settlement agreement reached through mediation and signed by the settling parties is exempt from this general rule, if it satisfies a requirement of section 1123. (40 Cal.4th at pp. 191–192.)

Section 1123 provides: "A written settlement agreement prepared in the course of, or pursuant to, a mediation, is not made inadmissible, or protected from disclosure, by provisions of this chapter if the agreement is signed by the settling parties and any of the following conditions are satisfied: [¶] (a) The agreement provides that it is admissible or subject to disclosure, or words to that effect. [¶] (b) The agreement provides that it is enforceable or binding or words to that effect. [¶] (c) All parties to the agreement expressly agree in writing, or orally in accordance with Section 1118, to its disclosure. [¶] (d) The agreement is used to show fraud, duress, or illegality that is relevant to an issue in dispute."

---

[14] Some courts use the term, "mediation privilege," but because it is not a true privilege, others use the term, "mediation confidentiality." (*Wimsatt v. Superior Court* (2007) 152 Cal.App.4th 137, 150, fn. 4 [61 Cal.Rptr.3d 200].)

Cruz contends that the agreement satisfied the requirements of subdivisions (a) and (b) of section 1123, because the agreement was signed by the "relevant settling parties"—Cruz and Tony—and it expressly provided in paragraph G that the agreement was binding on all parties, and in paragraph I that the parties waived the provisions of section 1119, subdivision (b). She argues that Cruz and Tony are the only relevant settling parties because they agreed to independent covenants in the agreement.

Because Cruz's argument depends upon a severable, independently enforceable agreement, it is Cruz who has placed the "cart before the horse." Before a term may be severed and enforced, the agreement must be admissible. (*Fair, supra,* 40 Cal.4th at p. 199.) Moreover, the exceptions enumerated in section 1123 require the signature of the settling parties, not the *relevant* settling parties. Here, the parties to the settlement agreement are expressly set forth, and include not only Cruz and Tony, but also Yolanda, Tina and Mark. Thus, the agreement names the persons who must sign it to bind themselves to its provisions.

Cruz acknowledges that Mark did not personally sign the agreement, and was thus not bound by a settlement, but claims that the agreement need not be enforceable as a whole for its waiver of confidentiality to be enforceable. She contends that the confidentiality waiver may be separately enforced, and that by signing the agreement, Mark's attorney agreed to that provision on his behalf.

Cruz relies on *Stewart v. Preston Pipeline Inc.* (2005) 134 Cal.App.4th 1565 [36 Cal.Rptr.3d 901] (*Stewart*). In *Stewart*, the parties had submitted their personal injury dispute to mediation, at the conclusion of which a settlement agreement—containing an express waiver of mediation confidentiality—was prepared and signed by the plaintiff, the plaintiff's attorney, and the defendants' attorney, but not the defendants. (*Id.* at pp. 1568–1569.) After the plaintiff rejected the settlement and sued to recover damages for his injuries, the defendants brought motions under Code of Civil Procedure sections 664.6 and 437c to enforce the settlement agreement. (134 Cal.App.4th at p. 1569.) The plaintiff argued that a waiver of mediation confidentiality could not be enforced by a party who did not personally sign the agreement. (*Id.* at p. 1580.) The court acknowledged that an attorney must have authorization to waive his or her client's substantive rights, but construed waivers of mediation confidentiality as procedural matters subject to waiver in the attorney's discretion. (*Id.* at pp. 1581–1583.)

*Stewart* is distinguishable. There, the party seeking to exclude the agreement and avoid its enforcement was the plaintiff who had personally signed

it, along with the confidentiality waiver.[15] Moreover, the defendants who sought to enforce the agreement did not suggest their counsel lacked authority to bind them. This was, as the court observed, "of some consequence" as *"neither defendants nor their insurer challenged defense counsel's authority to sign the stipulation on their behalf."* (*Stewart, supra,* 134 Cal.App.4th at p. 1580.) Instead, the defendants sought to enforce a contract containing a waiver of mediation confidentiality which they had authorized their counsel to sign on their behalf and which the plaintiff had personally signed.

Here, Mark neither signed the agreement with its confidentiality waiver nor sought to enforce it. Nor did he authorize his counsel to bind him. The court in *Stewart* was careful to distinguish the two circumstances, finding that the purpose of mediation confidentiality "would not be promoted by applying confidentiality statutes to prevent one settling party from enforcing a settlement agreement *signed by the party allegedly reneging* on the settlement." (*Stewart, supra,* 134 Cal.App.4th at p. 1575, italics added.) The court distinguished the facts before it from another case, where "significantly, the parties asserting evidentiary objections to mediation conduct and communications had not waived mediation confidentiality." (*Id.* at p. 1575, citing *Foxgate Homeowners' Assn. v. Bramalea California, Inc.* (2001) 26 Cal.4th 1, 16–17 [108 Cal.Rptr.2d 642, 25 P.3d 1117] (*Foxgate*).)[16] Mark testified, and his counsel Ruth Phelps confirmed, that he did not authorize her to waive mediation confidentiality on his behalf. He is not the party seeking to enforce the settlement agreement; nor is he a signatory seeking to renege on the agreement by invoking a confidentiality waiver.[17] Thus, *Stewart* has no application here.

We conclude that the trial court correctly held that the term of the agreement waiving confidentiality never took effect because Mark did not sign it. The agreement was thus inadmissible. Because the agreement was inadmissible, it was unenforceable in whole or in part. (*Fair, supra,* 40 Cal.4th at p. 199.)

---

[15] In general, a party who did not sign a written contract may seek to enforce the contract against a party who did sign it. (Civ. Code, § 3388.)

[16] *Foxgate* was not an express waiver case. There, the objecting parties' attorney had previously submitted declarations disclosing communications made during mediation. (*Foxgate, supra,* 26 Cal.4th at pp. 5–8.) The California Supreme Court held that the facts did not fall within a statutory exception, and the trial court was not authorized to create one. (*Id.* at pp. 15–16.)

[17] We reject Cruz's suggestion that Mark was not an essential party to the mediation, and that his consent to the agreement was unnecessary. Cruz concedes that Mark was a party to the mediation. Thus, his signature or express waiver of confidentiality was required. (§ 1123.)

### 4. *Attorney Fees*

Davis contends that the trial court erred in denying his motion for attorney fees. As Davis notes, the sole question presented is one of first impression, viz., whether attorney fees are recoverable under Civil Code section 1717 where the contract providing for such fees has been excluded as inadmissible under division 9, chapter 2 of the Evidence Code, section 1115 et seq. We conclude they are not recoverable.

"Many contracts include a provision requiring a contracting party to pay any attorney fees that the other party incurs to enforce the contract or in litigation arising from the contract. To ensure that these contractual attorney fee provisions do not operate in an unfairly one-sided manner, the Legislature enacted Civil Code section 1717 . . . ." (*Santisas v. Goodin* (1998) 17 Cal.4th 599, 602 [71 Cal.Rptr.2d 830, 951 P.2d 399].) Civil Code section 1717 provides in subdivision (a): "In any action on a contract, where the contract specifically provides that attorney's fees . . . incurred to enforce that contract . . . shall be awarded either to one of the parties or to the prevailing party, then the party who is determined to be the party prevailing on the contract, whether . . . specified in the contract or not, shall be entitled to reasonable attorney's fees . . . ."

Davis contends that because Cruz would have been entitled to her attorney fees under the mediation agreement had she prevailed, he must be afforded the reciprocal right to fees usually granted to a "prevailing party [who] defends the litigation 'by successfully arguing the inapplicability, invalidity, unenforceability, or nonexistence of the same contract.' [Citation.]" (*Santisas v. Goodin, supra*, 17 Cal.4th at p. 611.) He relies on the proposition that "when a party litigant prevails in an action on a contract by establishing that the contract is invalid, inapplicable, unenforceable, or nonexistent, section 1717 permits that party's recovery of attorney fees whenever the opposing parties would have been entitled to attorney fees under the contract had they prevailed. [Citations.]" (*Ibid.*)

Here, the mediation agreement was not simply unenforceable; it was inadmissible. (*Fair, supra*, 40 Cal.4th at p. 199; § 1119, subd. (b).) Section 1123 contains no admissibility exception to permit the application of Civil Code section 1717. "To carry out the purpose of encouraging mediation by ensuring confidentiality, the statutory scheme . . . unqualifiedly bars disclosure of communications made during mediation absent an express statutory exception." (*Foxgate, supra*, 26 Cal.4th at p. 15.) There are no exceptions to mediation confidentiality, other than those provided by statute. (*Rojas v. Superior Court* (2004) 33 Cal.4th 407, 416, 422 [15 Cal.Rptr.3d 643, 93 P.3d 260].) Thus, except where due process is implicated, there can be no

judicially created exceptions to mediation confidentiality. (*Simmons v. Ghaderi* (2008) 44 Cal.4th 570, 582–583 [80 Cal.Rptr.3d 83, 187 P.3d 934].) Further, there are no implied waivers of confidentiality. (*Ibid.*; *Eisendrath v. Superior Court* (2003) 109 Cal.App.4th 351, 362 [134 Cal.Rptr.2d 716].)

Davis concedes that the agreement containing an attorney fee provision is inadmissible, but argues that it would be inherently unfair to relieve Cruz of the obligation to pay his attorney fees, when she would have been entitled to her fees had she prevailed on the contract. Our Supreme Court has held that courts may not judicially create an exception to avoid unfairness, such as to redress bad faith actions or tactics in the course of the mediation. (See *Foxgate, supra*, 26 Cal.4th at p. 17.) "[A]ny resolution of the competing policies is a matter for legislative, not judicial action." (*Ibid.*, fn. 13.)

Davis also asks that we apply the doctrine of judicial estoppel to prevent Cruz from taking one position in her appeal—that the mediation agreement was admissible and enforceable—and taking the opposite position in supporting the trial court's denial of attorney fees. " 'Judicial estoppel is an equitable doctrine aimed at preventing fraud on the courts.' [Citation.] It prohibits a party from taking inconsistent positions in the same or different judicial proceedings. [Citation.] Judicial estoppel ' " 'is invoked to prevent a party from changing its position over the course of judicial proceedings when such positional changes have an adverse impact on the judicial process . . . .' " ' [Citation.]" (*M. Perez Co., Inc. v. Base Camp Condominiums Assn. No. One* (2003) 111 Cal.App.4th 456, 463 [3 Cal.Rptr.3d 563].)

The mediation confidentiality statutes provide no exception for judicial estoppel, and the courts may not fashion one, except in the case of estoppel to contest jurisdiction, where the party to be judicially estopped "asked the court to act in excess of its jurisdiction and then argued that the court had no power to act as it did." (*Simmons v. Ghaderi, supra*, 44 Cal.4th at p. 584.) Without such facts, in an ordinary contract action in which the parties have not executed express waivers of confidentiality and in which no due process right is implicated, the judicial creation of "exceptions to admit evidence that does not meet statutory requirements would run contrary to legislative intent." (*Ibid.*) Here, Cruz did not ask the trial court to act in excess of its jurisdiction, and Davis does not assert a denial of due process. Thus, judicial estoppel provides no exception to mediation confidentiality.

## DISPOSITION

The judgment and the order denying the motion for attorney fees are affirmed. Davis shall have costs on appeal.

Epstein, P. J., and Willhite, J., concurred.