Filed 9/18/15  Howard v. Spruce Holdings CA5

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| CHARLES V. HOWARD, Individually and as Personal Representative, etc., | F069073 |
| Plaintiff and Appellant, | (Super. Ct. No. VCU 249871) |
| v. | |
| SPRUCE HOLDINGS, LLC, | **OPINION** |
| Defendant and Respondent. | |

-ooOoo-

APPEAL from orders of the Superior Court of Tulare County.  Paul A. Vortmann and Harry N. Papadakis,* Judges.

Meghan E. Howard for Plaintiff and Appellant.

Wilson Getty, William C. Wilson, D. Scott Barber; Williams Iagmin and Jon R. Williams for Defendant and Respondent.

-ooOoo-

---

\*      Retired Judge of the Fresno Superior Court assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

Plaintiff appeals from the order denying plaintiff's motion for reconsideration of the order granting defendant's motion to enforce the settlement agreement entered into by the parties after mediation. We affirm.

### FACTUAL AND PROCEDURAL BACKGROUND

The complaint in this action names the Estate of Karen L. Howard as plaintiff and alleges a cause of action for wrongful death and a negligence cause of action for medical expenses incurred by decedent prior to her death. It alleges decedent's husband, Charles V. Howard, is entitled to bring the action as decedent's husband and as the duly appointed personal representative of her estate. On October 21, 2013, the parties mediated the claims asserted in the complaint before a retired judge. Charles[1] attended the mediation, along with his daughter, Nicole Howard, and his attorneys. Charles's other daughter, Meghan Howard, was unable to attend. A representative of defendant, Spruce Holdings, LLC, doing business as Redwood Springs Healthcare Center, and defendant's attorney also attended. At the end of the day, those present reached an agreement and signed the stipulation for settlement. Subsequently, counsel for plaintiff advised counsel for defendant that the Howards were having second thoughts about the settlement agreement. The Howards discharged their attorneys and substituted Meghan, an attorney, in their place.

Defendant filed a motion to enforce the settlement agreement, pursuant to Code of Civil Procedure section 664.6. The estate, through Meghan as its attorney, filed opposition, asserting that Charles, Nicole, and Meghan were the plaintiffs in the action, and the signatures of all three were required in order to settle the litigation. Because Meghan had not signed, they contended there was no enforceable settlement agreement

---

[1] We refer to the Howards by their first names for clarity and convenience because they share a last name. No disrespect is intended.

and defendant's motion should be denied. In its reply, defendant contended Meghan was not a party to the action, so her signature on the settlement agreement was not necessary in order to have an enforceable agreement. Defendant contended Charles was the personal representative of the estate, the only plaintiff, and his signature on its behalf resulted in a binding written agreement.

The trial court granted defendant's motion to enforce the settlement and ordered plaintiff to comply with it, concluding Charles's signature as personal representative of the estate and the signature of defendant's representative resulted in a binding agreement. Plaintiff filed a motion for reconsideration. The trial court denied it, both because the motion was not timely served on defendant and because plaintiff did not identify any new or different facts, circumstances or law warranting reconsideration, as required by Code of Civil Procedure section 1008. Plaintiff appeals from the order denying the motion for reconsideration.

## DISCUSSION

### I.     Appealability

"'A reviewing court has jurisdiction over a direct appeal only when there is (1) an appealable order or (2) an appealable judgment. [Citations.]' [Citation.] Regardless of whether an appealability challenge is raised, '[t]he existence of an appealable judgment is a jurisdictional prerequisite to an appeal. A reviewing court must raise the issue on its own initiative whenever a doubt exists as to whether the trial court has entered a final judgment or other order or judgment made appealable by Code of Civil Procedure section 904.1.'" (*Critzer v. Enos* (2010) 187 Cal.App.4th 1242, 1250 (*Critzer*).)

The notice of appeal indicates the appeal is from the March 4, 2014, order, which was the order denying plaintiff's motion for reconsideration of the order enforcing the settlement agreement. Generally, a motion for reconsideration is not separately appealable, but "if the order that was the subject of a motion for reconsideration is appealable, the denial of the motion for reconsideration is reviewable as part of an appeal

3.

from that order." (Code Civ. Proc., § 1008, subd. (g).)[2] Here, the notice of appeal did not indicate plaintiff was appealing from the underlying order granting defendant's motion to enforce the settlement agreement.

In *Walker v. Los Angeles County Metropolitan Transportation Authority* (2005) 35 Cal.4th 15 (*Walker*), plaintiff's notice of appeal indicated she was appealing from the order denying her motion for new trial. (*Id*. at p. 18.) Such an order is not separately appealable, but may be reviewed on appeal from the underlying judgment. (*Ibid*.) The court noted that notices of appeal are to be liberally construed (citing Cal. Rules of Court, former rule 1(a)(2), now rule 8.100(a)(2)), and concluded "a reviewing court should construe a notice of appeal from an order denying a new trial to be an appeal from the underlying judgment when it is reasonably clear the appellant intended to appeal from the judgment and the respondent would not be misled or prejudiced." (*Walker, supra,* 35 Cal.4th at pp. 20–21, 22, fn. omitted.) We may apply this principle here, and consider the appeal to be from the underlying order granting defendant's motion to enforce the settlement agreement. It is reasonably apparent plaintiff intended to challenge the validity of the settlement agreement and the order enforcing it. Defendant would not be prejudiced because its respondent's brief indicates it interpreted plaintiff's appeal as challenging the order granting the motion to enforce the settlement, and it addressed the propriety of that order on the merits.

Whether the order granting defendant's motion to enforce the settlement agreement is a final, appealable order or judgment depends on whether it finally disposed of the action. The court considered this question in *Critzer*:

> "It is true that the court, in its order granting the HOA's motion to enforce settlement, did not formally use the word 'judgment' as provided under the statute. [Citation.] '"A judgment is final 'when it terminates the litigation

---

[2] All further statutory references are to the Code of Civil Procedure unless otherwise indicated.

between the parties on the merits of the case and leaves nothing to be done but to enforce by execution what has been determined.'" [Citations.]' [Citation.] As the high court has further explained: '"It is not the form of the decree but the substance and effect of the adjudication which is determinative. As a general test, which must be adapted to the particular circumstances of the individual case, it may be said that where no issue is left for future consideration except the fact of compliance or noncompliance with the terms of the first decree, that decree is final, but where anything further in the nature of judicial action on the part of the court is essential to a final determination of the rights of the parties, the decree is interlocutory."'" (*Critzer, supra*, 187 Cal.App.4th at pp. 1251–1252.)

Here, the record indicates the trial court adopted its tentative ruling as its final order. The ruling did not purport to be a judgment, nor did it order entry of judgment. It granted the motion to enforce the stipulation for settlement and ordered plaintiff to comply with that agreement. The stipulation requires plaintiff to execute a dismissal with prejudice once payment is made. Thus, the order contemplated dismissal of the action.

The order granting the motion to enforce the settlement left no issue for future consideration by the court except the fact of compliance or noncompliance with the terms of the order. No further judicial action on the part of the court was contemplated, other than enforcement of the order; no further judicial action was essential to a final determination of the rights of the parties. Accordingly, we will amend the order to include an appealable judgment incorporating the terms of the written settlement agreement so as to expedite appellate review. (See *Hines v. Lukes* (2008) 167 Cal.App.4th 1174, 1183.)

## II. Enforcement of Stipulation for Settlement

In reviewing the grant of a motion to enforce a settlement agreement pursuant to section 664.6, the trial court's factual findings regarding whether the parties entered into a binding settlement agreement are subject to substantial evidence review. (*Conservatorship of McElroy* (2002) 104 Cal.App.4th 536, 544.) Questions of law,

including construction and application of statutes, are subject to independent review. (*Ibid.*)

### A.	*Parties to the action*

The first question raised by plaintiff's challenge to the order enforcing the settlement agreement is:  who is the plaintiff?

"An 'estate' is not a legal entity and is neither a natural nor artificial person.  It is merely a name to indicate the sum total of the assets and liabilities of a decedent ….  [Citation.]  An 'estate' can neither sue nor be sued." (*Estate of Bright v. Western Air Lines* (1951) 104 Cal.App.2d 827, 828–829.)  Any litigation on behalf of the estate must be maintained by the executor or administrator of the estate.  (*Galdjie v. Darwish* (2003) 113 Cal.App.4th 1331, 1344.)  The executor or administrator of the estate is also referred to as the personal representative.  (Prob. Code, § 58.)

"A wrongful death cause of action is a statutory claim providing compensation for specified heirs of the decedent for the loss they suffered as a result of the decedent's death.  [Citations.]  The right to recover under a wrongful death theory is entirely statutory, and the wrongful death statutes create a new cause of action that did not exist in the common law." (*Adams v. Superior Court* (2011) 196 Cal.App.4th 71, 76 (*Adams*).)  The wrongful death statute provides that "[a] cause of action for the death of a person caused by the wrongful act or neglect of another may be asserted by any of the following persons or by the decedent's personal representative on their behalf." (§ 377.60.)  The list of persons other than the decedent's personal representative who may bring the action includes:  "decedent's surviving spouse, domestic partner, children, and issue of deceased children." (§ 377.60, subd. (a).)

The decedent's personal representative may maintain the wrongful death action on behalf of the heirs, as "'a statutory trustee to recover damages for the benefit of the heirs.' [Citations.]  Either the decedent's personal representative on behalf of the heirs or the specified heirs (either as plaintiffs or joined defendants) may assert the wrongful death

6.

claim—but not both." (*Adams, supra,* 196 Cal.App.4th at p. 77.) If the action is brought by the heirs, all the heirs should join or be joined in the action. (*Ruttenberg v. Ruttenberg* (1997) 53 Cal.App.4th 801, 807.) If the wrongful death plaintiffs fail to join all the heirs, the superior court has jurisdiction to try the action, but the plaintiffs "proceed at their peril." (*Id*. at p. 809.) Any omitted heirs may have a cause of action against the plaintiffs for damages for failing to join them in the wrongful death action. (*Id*. at pp. 807–810.)

The complaint alleged Charles was entitled to bring this wrongful death action, both as decedent's spouse and as her personal representative. He did not join as plaintiffs (or as nominal defendants who declined to join as plaintiffs) decedent's daughters, who were also entitled to bring the wrongful death cause of action as heirs. (§ 377.60, subd. (a).) No one other than Charles was identified in the complaint as a party prosecuting the action. Accordingly, we construe the complaint as naming Charles as the only plaintiff in the action, whether in his capacity as personal representative or in his capacity as heir.

A cause of action of the decedent that survives his or her death may be brought by his or her personal representative or successor in interest. (§§ 377.20, 377.30.) The second cause of action of the complaint alleged such a cause of action. There was no allegation in the complaint regarding a successor in interest. Consequently, Charles as personal representative was the only proper plaintiff alleged in this cause of action.

### B. Motion to enforce settlement agreement

"If parties to pending litigation stipulate, in a writing signed by the parties outside the presence of the court or orally before the court, for settlement of the case, or part thereof, the court, upon motion, may enter judgment pursuant to the terms of the settlement. If requested by the parties, the court may retain jurisdiction over the parties to enforce the settlement until performance in full of the terms of the settlement." (§ 664.6.) Because Charles is the plaintiff in this action, substantial evidence supports the trial court's finding that his signature was the only signature, other than defendant's,

7.

required in order to make the stipulation for settlement a binding, enforceable agreement between the parties.[3]

Charles did not dispute that he signed the stipulation for settlement. He did suggest he signed because he felt pressured to do so. The mediation took place in San Francisco and no agreement had been reached at 5:00 p.m. Charles asserted his attorney, Reginald McKamie, "stressed that he needed to leave in order to catch his flight and traffic [was] already bad because of the Bart strike." Plaintiff's counsel and defense counsel "stressed that an agreement needed to be made at that time because they would not come back to continue mediation," and Charles "felt pressured to sign whatever they said."

In *Chan v. Lund* (2010) 188 Cal.App.4th 1159 (*Chan*), the plaintiff, Chan, engaged in mediation with the defendants on the eve of trial; the parties reached a settlement and Chan signed the written agreement. Subsequently, Chan discharged his attorney, hired a new attorney, and resisted enforcement of the agreement, claiming his consent to the settlement was obtained through the economic duress, undue influence, and fraud of his former attorney. Chan declared that, prior to the mediation, he indicated to his attorney that he did not want to attend the mediation; his attorney replied that, if Chan would not attend the mediation, the attorney would not represent him at trial. (*Id.* at p. 1167.) Chan attended the mediation, but when he indicated he would only agree to the settlement proposed on his behalf earlier in the litigation, his attorney said Chan was not negotiating, and the attorney would not represent him at trial. (*Ibid.*) Later in the mediation session, Chan's attorney told him he would discount his fee by $10,000 if Chan would agree to the terms set out in the written settlement agreement. Chan signed,

---

**3**    There was also substantial evidence that neither plaintiff's attorney nor the Howards advised defendant's attorney or the judge who presided at the mediation that the settlement was conditioned on Meghan approving it or signing the written agreement.

assertedly because he feared his attorney would carry out the threat not to represent him at trial the next day. (*Ibid.*)

The appellate court upheld the trial court's order enforcing the settlement agreement. The court concluded Chan could rescind the agreement on the ground of economic duress only as to the contracting party who exercised the duress, or a contracting party jointly interested with him. (*Chan, supra*, 188 Cal.App.4th at p. 1174.) Since Chan's attorney was not a contracting party or jointly interested with a contracting party, Chan was not entitled to rescind. Further, there was no evidence the defendants (the contracting parties) connived with Chan's attorney or were aware of his threats when Chan executed the agreement. (*Ibid.*) Consequently, Chan was not entitled to rescind on the ground of economic duress. (*Id.* at p. 1175.)

Here, Charles seeks to avoid the settlement agreement by claiming he was pressured into signing it by his attorneys and defendant's attorney. The only pressure alleged was that one of his attorneys had to leave to catch a flight, and his attorneys and opposing counsel all represented that they would not come back and continue the mediation later. No other consequence of a failure to agree was threatened. The only result of not signing the agreement would have been that the matter would not have settled and would have proceeded to trial. At worst, Charles claims he was rushed into a decision. There was no threat that plaintiff's attorney would not represent him at trial if he failed to sign the agreement; there was no threat by defendant of any other adverse consequences to Charles or his case if he declined to sign the agreement.

"A party to a contract may rescind the contract … [i]f the consent of the party rescinding … was given by mistake, or obtained through duress, menace, fraud, or undue influence, exercised by or with the connivance of the party as to whom he rescinds, or of any other party to the contract jointly interested with such party." (Civ. Code, § 1689, subd. (b)(1).) Charles does not point to any evidence of duress, menace, fraud, or undue

9.

influence by defendant or anyone jointly interested in the action with defendant, sufficient to warrant rescission of the settlement agreement.

The evidence indicates the parties attended mediation, negotiated a settlement agreement, and put it in writing. Charles, Nicole, defendant's representative, counsel for both parties, and the retired judge presiding at the mediation all signed the writing. Substantial evidence supports the trial court's determination that the parties entered into an enforceable settlement agreement.

Relying on *Rael v. Davis* (2008) 166 Cal.App.4th 1608 (*Rael*), plaintiff argues the signatures of all of the Howards were required for an enforceable settlement agreement. *Rael*, however, is distinguishable. In *Rael*, Mark Rael, the son of Tony Rael, Jr., initiated a legal proceeding for conservatorship of Tony's estate and person. (*Id*. at p. 1613.) The court ordered Tony and Mark to mediation. Others, including Tony's wife, Cruz, and his daughters from a previous marriage, participated in the mediation, along with the attorneys for Tony, Mark, and Cruz. At the fourth mediation session, those present reached an agreement, put it in writing, and signed it. Mark, however, was not present and did not sign the agreement. (*Id*. at p. 1613.) The conservatorship matter proceeded to trial. After Tony died, Cruz filed suit, attempting to enforce the settlement agreement prepared at the fourth mediation session against the executor of Tony's estate. (*Id*. at p. 1615.) She contended a severable, enforceable contract between Tony and Cruz was formed regardless of Mark's failure to sign the writing. (*Id*. at pp. 1616, 1617.)

The court affirmed the judgment against Cruz. From the evidence presented, the trial court had concluded those present at the mediation intended the agreement to become operative only if Mark also signed it. (*Rael, supra*, 166 Cal.App.4th at p. 1616.) The evidence included Cruz's deposition testimony that everyone's signature was required. (*Id*. at p. 1616, fn. 8.) Because there was no binding agreement, the clause in the proposed agreement waiving mediation confidentiality did not take effect, and the writing was not admissible to prove a severable contract between Tony and Cruz. (*Id*. at

10.

p. 1616.)  The agreement expressly set forth the persons who had to sign the agreement to bind themselves to its provisions; they included not only Tony and Cruz, but Tony's three children.  (*Id.* at p. 1620.)  Because Mark had not signed it, the term of the agreement waiving mediation confidentiality never took effect and the agreement was inadmissible. Because it was inadmissible, no part of the agreement was enforceable.

In *Rael*, Mark, the nonsigning individual, was a party to the litigation in the course of which the mediation took place.  He was also expressly included in the agreement as a person required to sign.  There was evidence everyone who signed the agreement intended it to be inoperative until Mark signed.

Here, the mediation was between the parties to the wrongful death action. Meghan, the nonsigning individual, was not a party to the litigation.  The agreement did not expressly provide for Meghan's signature.  There was evidence Charles and Nicole did not intend the agreement to be binding until Meghan signed it.  There was also evidence defendant had no such intent.  The trial court implicitly resolved the issue in favor of defendant.  Substantial evidence supports the trial court's implied finding, and we cannot substitute a contrary finding for that of the trial court.  (*Critzer, supra*, 187 Cal.App.4th at p. 1253.)  We find no error in the trial court's order granting the motion to enforce the settlement agreement.

### C.    *Motion for reconsideration*

After the motion to enforce the settlement agreement was granted, plaintiff filed a motion for reconsideration.  The motion for reconsideration was denied both on procedural grounds (because it was not timely served on defendant) and on the merits (because it did not present any new facts, circumstances, or law as grounds for reconsideration).

If hand served, the motion and all supporting papers were required to be served at least 16 court days before the hearing date.  (§ 1005, subd. (b).)  The motion was set for March 4, 2014; thus, it was required to be hand served on defendant by February 7, 2014.

Although the motion was timely filed on February 5, 2014, the evidence presented to the trial court indicated it was hand served on defense counsel on February 13, 2014, with no exhibits attached. Substantial evidence supports the trial court's denial of the motion for reconsideration on the ground all moving and supporting papers were not timely served on defendant. (§ 1005, subd. (b).)

Reconsideration is governed by section 1008:

"When an application for an order has been made to a judge, or to a court, and refused in whole or in part, or granted, or granted conditionally, or on terms, any party affected by the order may, within 10 days after service upon the party of written notice of entry of the order and based upon new or different facts, circumstances, or law, make application to the same judge or court that made the order, to reconsider the matter and modify, amend, or revoke the prior order. The party making the application shall state by affidavit what application was made before, when and to what judge, what order or decisions were made, and what new or different facts, circumstances, or law are claimed to be shown." (§ 1008, subd. (a).)

In addition, "'[a] party seeking reconsideration … must provide a satisfactory explanation for the failure to produce the evidence at an earlier time.'" (*Jones v. P.S. Development Co., Inc.* (2008) 166 Cal.App.4th 707, 723–724 (*Jones*), disapproved on another ground in *Reid v. Google* (2010) 50 Cal.4th 512, 532, fn. 7.)

The declarations submitted in support of plaintiff's motion for reconsideration did not explain what application was made before, when, or to what judge. They did not set out the claimed new or different facts, circumstances, or law on which plaintiff relied in bringing the motion for reconsideration. They did not explain why any purportedly new facts, circumstances, or law were not presented in plaintiff's opposition to the motion to enforce the settlement agreement. The motion for reconsideration, like plaintiff's opposition to the motion to enforce the settlement agreement, was based on the claim that the Howards were all plaintiffs in the action; it again asserted their belief the settlement agreement required the approval of all three of them before it would become binding.

12.

The declarations again asserted the understanding among the three of them that Meghan had the authority to make final decisions about the lawsuit.

"The trial court's ruling on a motion for reconsideration under section 1008 is reviewed for an abuse of discretion." (*Jones, supra*, 166 Cal.App.4th at p. 724.) Plaintiff did not identify any new or different facts as the basis for the motion, or explain why any such facts were not presented in opposition to the motion to enforce the settlement agreement. The motion generally repeated the same arguments and facts presented in opposition to the motion to enforce the settlement agreement. We conclude the trial court did not abuse its discretion in denying the motion for reconsideration on both procedural and substantive grounds.

## *DISPOSITION*

The February 4, 2014, order granting defendant's motion to enforce the settlement pursuant to Code of Civil Procedure section 664.6 is modified to include a final appealable judgment incorporating the terms of the written settlement agreement. The judgment and the order denying plaintiff's motion for reconsideration of that order are affirmed. Defendant is entitled to its costs on appeal.

_____
HILL, P.J.

WE CONCUR:


_____
KANE, J.


_____
SMITH, J.

13.