[Civ. No. 856.    Third Appellate District.—October 5, 1911.]

ELLIS ROBINSON, Respondent, v. THE AMERICAN FISH AND OYSTER COMPANY, a Corporation, Appellant.

ACTION FOR FISH SOLD AND DELIVERED—CONFLICTING EVIDENCE—ABSOLUTE SALE—SALES ON COMMISSION—SUPPORT OF VERDICT.—It is held in this action for fish sold and delivered to the defendant corporation that the evidence is conflicting as to whether the sales of fish made by plaintiff and his assignors were absolute sales as claimed for the plaintiff, or were sales upon commission as claimed

by defendant, and there being sufficient evidence for the plaintiff to support the verdict in his favor, it will not be disturbed upon appeal.

Id.—Ostensible Power of Agent of Defendant to Purchase Fish Sold.—It is held that the jury were warranted in finding that an agent of the defendant who authorized the purchase of all the fish sold and delivered at least had ostensible power to make an agreement for an absolute purchase of the same for the defendant.

Id.—Nature of Ostensible Agency.—Under section 2300 of the Civil Code, "an agency is ostensible when the principal intentionally or by want of ordinary care caused a third person to believe another his agent who is really not employed by him."

Id.—Conduct of Defendant Implying Power of Agent.—Even if it be true that the agent transcended his authority, the conduct of the defendant employing him very clearly tended to lead the plaintiff and his assignors and one dealing for them into the belief that he was acting in the legitimate scope of his authority in making the purchase of fish absolutely, and not at all upon commission, and that he was possessed of plenary power to do so. In such case the law will imply from the conduct of the defendant authority in the agent to make the agreement of purchase found by the jury.

Id.—Law Forbidding Principal to Deny Authority—Estoppel by Conduct.—The law forbids the principal to deny an authority of his agent which his own conduct has invited those with whom he was dealing to assume. In such case the principal is bound by his acts and estopped by his own conduct from denying the authority of the agent to go as far as he did.

Id.—Right of Strangers to Rely on Apparent Powers.—When the special character of the agency is not known, and the principal has clothed the agent with apparent powers, strangers in dealing with the agent may assume that such powers are possessed. The principal cannot by private communication with his agent limit the authority which he allows the agent to assume.

Id.—Allowance of Interest on Purchase Price of Fish Sold.—Interest is properly allowed on the amount due for fish sold and delivered, from the date of sale and delivery, in view of the fact that the quantity sold and delivered and the price were definitely fixed and known, and no accounting or resort to evidence was necessary to establish the amount due, but the amount was susceptible of ascertainment by simple computation.

Id.—Absence of Defense as to Nonmerchantable Character of Fish Delivered—Offer of Evidence Properly Rejected.—Where the answer set up no defense as to the nonmerchantable character of any of the fish sold and delivered, the court properly excluded the offer of the defendant to make such proof. Any special defense, to be available, must be pleaded.

APPEAL from a judgment of the Superior Court of Humboldt County. George D. Murray, Judge.

The facts are stated in the opinion of the court.

Webster & Webster, T. H. Selvage, J. J. Cairns, and Webster, Webster & Blewett, for Appellant.

Otto C. Gregor, and Kenneth Newett, Jr., for Respondent.

HART, J.—Plaintiff instituted this action for the purpose of recovering the sum of $815.60, with interest from October 23, 1909, said sum representing, it is alleged, the purchase price of fish sold and delivered by plaintiff and his assignors to the appellant.

J. P. Meng, who was made a party defendant, was not served with summons, and the appellant was, therefore, alone proceeded against. (Code Civ. Proc., sec. 414.)

The cause was tried by jury and a verdict returned awarding plaintiff the total sum declared upon, with interest at the rate of seven per cent per annum, from the twenty-third day of October, 1909, the date of the delivery of the fish to appellant, and judgment was entered in favor of plaintiff in accordance with the terms of said verdict.

The appeal here is by the defendant, American Fish and Oyster Company, from the judgment so entered, the record being brought here by the method authorized by sections 953a, 953b and 953c of the Code of Civil Procedure.

The complaint contains seventeen counts, of which sixteen represent an equal number of distinct claims of persons and firms for fish sold and delivered to appellant, and which claims were, it is alleged, assigned to plaintiff. The seventeenth count is for fish sold and delivered to appellant by plaintiff himself.

The complaint is verified.

The answer specifically denies, *seriatim*, the allegations of the several counts of the complaint.

It is charged that the court erred in its rulings as to certain evidence and misdirected the jury in matters of law; that the evidence is insufficient to justify and sustain a ver-

dict awarding to plaintiff any sum whatsoever as against appellant; that it was error to allow interest on the amount returned by the jury in favor of plaintiff and against the appellant.

Of the foregoing assignments the first in importance is that involved in the claim that the evidence does not support the verdict, and to this we will first give attention. The particular contention in this regard is that the evidence shows that the fish delivered by plaintiff to appellant were the ''first run of fish''—that is, fish caught on the first night of the season of 1909, and that the agreement was that fish so taken should be delivered to appellant on consignment—that is, upon the understanding that they were so delivered to appellant to be sold by it in San Francisco, and, after deducting a commission for selling said fish, the appellant was to return the balance to plaintiff—and that therefore ''the plaintiff could only expect to receive what such fish brought in the market in San Francisco, to which point such fish had been shipped.''

While there is a conflict in the evidence as to the circumstances by which plaintiff and his assignors were employed to furnish fish to the appellant, there is, nevertheless, in our opinion, sufficient evidence to support the verdict.

1. The facts, as established to the evident satisfaction of the jury, are: The appellant is, as the complaint alleges, a corporation engaged in the business of packing and selling fish, with headquarters in the city of San Francisco. One J. A. Junta had for several years acted as its agent for the purpose of catching, buying and shipping to it in San Francisco fish taken from Eel river, in Humboldt county. One J. P. Meng had also been for several years engaged in like business on Eel river, representing other San Francisco wholesale fish dealers. Either late in the year 1908 or at the beginning of the year 1909, Junta had a conversation with Meng in which he proposed to employ the latter to buy fish during the season of 1909 for him (Junta), or, more properly, for the appellant. Meng finally agreed to work for Junta upon the understanding that he would be paid for his services at the rate of half a cent per pound of fish so handled by him. The services of Meng were to and did consist in buying fish

from a number of fishermen plying their occupations as such on Eel river, packing such fish in boxes and shipping them to appellant in San Francisco in the name of Junta. Meng was authorized by Junta to agree to pay the fishermen from whom he procured fish the price which would be paid during that season "down the river"—that is, whatever price those engaged in the fishery business at the mouth of the river fixed as the ruling price for fish taken from Eel river that year. Junta stated to Meng that he thought the price so paid would not be less than two cents per pound, and Meng so stated to the fishermen whose fish he engaged to purchase.

(It was shown that the price per pound paid to fishermen for fish by those engaged in the business of buying fish "at the mouth of the river" during the season of 1909 was two cents.)

In brief, the testimony of Meng discloses that Junta, acting for and in behalf of appellant, employed him to buy all the fish that he could during the season of 1909 on the terms above set forth, and that, in pursuance of that arrangement, he (Meng) purchased, under special agreement with plaintiff and his assignors, the fish referred to in the complaint. Meng further testified, in direct contradiction to Junta, that the latter never at any time suggested or even intimated that the fish taken from the first night's run and purchased by him (Meng) should be shipped on consignment, and that the proposition as to shipping on consignment he never heard of until after this action was instituted. Indeed, Meng testified that, after a controversy arose between him and the appellant over the payment for the fish he had bought under his arrangement with Junta, he and the fishermen (plaintiff's assignors) held a meeting, at which Junta was present, for the purpose of discussing the situation, and that Junta then declared that the fishermen were entitled to be paid by the appellant; that Junta on that occasion said absolutely nothing about any agreement that the first run of fish should be shipped on consignment or were to be sold by the appellant on commission.

It was shown that a "camp" (from which term we understand is meant a structure of some sort), bearing the name of the appellant, was established and maintained by Junta on Eel river, and there he carried on the business of catching and buying fish for the appellant during the years 1907, 1908

and 1909. Junta himself testified that, during the years 1907 and 1908, he had employed men at the "camp" catching fish, and that he also bought fish for the appellant from other fishermen than those who were employed by him; that he paid for the fish so purchased with money he received from the appellant.

But the appellant erects his entire argument against the sufficiency of the evidence to support the verdict upon the testimony of Junta. It is claimed that his testimony clearly and unmistakably shows that he had no authority to purchase outright fish taken on the first night of the season, and was so expressly instructed by appellant; that Junta communicated to Meng, when making the agreement with the latter, the fact of having received such instructions from his principal and expressly declared to Meng that he was not authorized to purchase, nor would he receive, the first night's run of fish, except upon the understanding that such fish should be shipped and delivered to appellant on consignment or subject to be sold by appellant upon commission; that the fish described in the complaint were from or consisted of the first night's catch. But upon the question whether he made such statement to Meng there is, as seen, a sharp conflict in the evidence, Meng having, as we have before shown, testified that Junta never at any time stated to him that the fish purchased by him from the first night's run should be shipped on consignment, or that appellant had instructed him (Junta) not to purchase fish caught the first night, or that the latter was without authority to contract for the purchase of fish taken from the river on the first night. Of course, it was for the jury to determine the truth of that as well as all other matters of fact as to which a conflict arose in the testimony, and its verdict constituted an implied finding, by which this court is bound, that the agreement as described by Meng was the agreement that was made between the parties.

And we think, as the plaintiff contends, that the jury were clearly warranted in finding, from all the facts and circumstances revealed to their minds by the evidence, that Junta did negotiate the agreement with Meng, to the making of which the latter testified, and that Junta was at the least possessed of ostensible power to make such agreement. (Civ. Code, sec. 2300.) That section provides that "an agency is

ostensible when the principal intentionally, or by want of ordinary care, causes a third person to believe another his agent who is really not employed by him.''

There is, as is clear from what has thus far appeared, no dispute about the employment of Junta as an agent of appellant with authority to procure fish for the corporation from Eel river, but the contention is, as seen, that if Junta made the agreement to which Meng testified, then the former exceeded his authority as such agent in that transaction. But even if it be true in point of fact that Junta thus transcended his authority, the conduct of the appellant, as disclosed by the evidence and as found by the jury, very clearly tended to lead Meng, the plaintiff and the latter's assignors into the belief that Junta was acting within the legitimate sphere of his employment when he entered into the agreement with Meng. The last named, and the fishermen with whom he had business, in pursuance with the agreement with Junta, had been engaged for years in fishing for a livelihood in Eel river and selling their fish, either directly or indirectly, to wholesalers, some of whom had their principal places of business in San Francisco, and they knew that Junta was, during the years 1907 and 1908, the representative of appellant, especially appointed and authorized to procure fish for it either by catching or purchasing the same. There had been nothing in his conduct as agent of appellant or in the conduct of the latter with regard to his agency indicating that he was without authority to buy fish from the first night's run. In short, from the whole record, the jury were justified in inferring that appellant had either clothed Junta with unrestricted authority as its agent to make contracts with the fishermen engaged in taking fish from Eel river for the purchase of their fish whensoever the same might be taken or caught, or that its conduct or silence as to his authority was such as to clearly imply that he was possessed of plenary power to do so.

That appellant knew that Junta purchased fish from the fishermen is not disputed, and if it were, the fact nevertheless would irresistibly follow from the admitted fact that the latter paid for such purchases with money furnished him by appellant. It is equally clear, from all the circumstances, that appellant knew that Junta held himself out, while at

the "camp" on Eel river, as the purchaser of fish for appellant, having no "strings" attached or annexed to his authority as such purchasing agent, and yet, if his authority as such agent was in fact limited in any measure, the appellant, then, either willfully or negligently, or, as our code puts it, "by want of ordinary care," permitted Junta to proceed, *ad libitum*, with the purchasing of fish or the making of agreements to purchase them from the fishermen, regardless of the time at which such fish were taken from the river.

The law will not, of course, permit a principal to escape the liability which it attaches to him by reason of such circumstances as are present here, upon the plea that the agent has violated or transcended some limitation that he has secretly or without the knowledge of those with whom his agent, as such, is to deal placed upon the latter's authority as such agent, and in this case it will imply from the conduct of appellant authority in Junta to make the agreement into which the jury found that he entered with Meng. As is said by all the law-writers and all the cases, the rule is that "quiescence is tantamount to acquiescence," and forbids the principal denying an authority which his own conduct has invited those with whom he was dealing to assume. (See Clark on Contracts, p. 717, and cases cited in the footnote.) So, it may be true—indeed, assumed—that appellant did limit the authority of Junta in the respects specified by the latter, and yet the former, under the circumstances as disclosed here, and according to the implied findings of the jury, is still bound by his acts and estopped by its own conduct from denying his authority to go as far as he did. "Where the special character of the agency is not known, and the principal has clothed the agent with apparent powers, strangers, in dealing with the agent, may assume that such apparent powers are possessed. The principal cannot, by private communications with his agent, limit the authority which he allows the agent to assume." (Clark on Contracts, p. 734, and cases cited.)

It is true that the general rule is that "if an agency is known and is special, or if the circumstances connected with it are such as should put a party dealing with the agent on inquiry, it becomes the duty of the person so dealing with the agent to inquire into the nature and extent of the au-

thority conferred by the principal, and to deal with the agent accordingly.'' (*Towle* v. *Leavitt*, 23 N. H. 360, [55 Am. Dec. 195] ; Clark on Contracts, p. 734.)    But in the case at bar, as we have seen, there was apparently no occasion for inquiry as to the extent or scope of the authority of Junta, for there was nothing in his acts or his conduct or in those of appellant that warranted inquiry by those with whom he was dealing into the extent of his authority.    There appeared, in other words, no extraneous circumstances in connection with Junta's agency that would suggest any question as to any restriction on the extent or scope thereof.    To the contrary, there were, as we have shown, circumstances of a very significant character tending to disclose that he was not limited in any degree in his authority to purchase fish caught *at any time* in Eel river from whomsoever he pleased.

2. There is no merit in the contention that the plaintiff was not entitled to interest on the several pleaded claims from the twenty-third day of October, 1910—the day on which the fish mentioned in the complaint were sold and delivered to appellant.    The quantity of fish sold to and received by appellant and the price to be paid therefor were definitely fixed and known to appellant.    It was not necessary, in other words, to resort to evidence in court or to an accounting or by an accord between the parties to establish the amount due.    To the contrary, the amount was susceptible of ascertainment by simple computation.    (*Cox* v. *McLaughlin*, 76 Cal. 60, [9 Am. St. Rep. 164, 18 Pac. 100], and cases therein cited; *Easterbrook* v. *Farquharson*, 110 Cal. 311, 317, [42 Pac. 811] ; *Courtney* v. *Standard Box Co.*, 16 Cal. App. 600, [117 Pac. 778].)    Indeed, there seems to have been no dispute as to the quantity of fish delivered to appellant by Meng, and while there was some controversy involving the price per pound which Junta agreed to pay therefor—that is, whether the price agreed upon was a cent and a half or two cents per pound—still the total amount due at either price was capable of ready ascertainment by mere computation, and, therefore, required no accounting to reach the precise sum due.    As is said in *Courtney* v. *Standard Box Co.*, 16 Cal. App. 600, [117 Pac. 778], so it is true here : ''Whether interest has been allowed upon the theory that compensation is thus awarded plaintiff for the use of his money, past due (section 1917, Civil Code), or as damages for

defendant's (appellant's) wrongful withholding of said money from plaintiff (section 3287, Civil Code), in either case the allowance was perfectly proper."

The case of *Heald* v. *Hendy,* 89 Cal. 632, [27 Pac. 67], cited by appellant as an authority against the allowance of interest in the present case, is not in point. There the action was for a recovery upon certain running accounts, the precise amounts of which could not be ascertained except by an examination of said accounts and evidence as to their correctness.

3. The offer of appellant to show the condition of the fish referred to in the complaint when they reached San Francisco was properly rejected. The appellant tendered no issue upon that proposition. As seen, it merely denied the indebtedness upon the several claims pleaded by plaintiff. To have permitted proof that the fish were in a bad or nonmerchantable condition when they were received in San Francisco would have been to allow proof of a special defense not pleaded or set up. It is only elementary to say that a special defense, to be available, must be pleaded, and that evidence in support of such a defense where the same is not specially pleaded would be clearly inadmissible, and where admitted under such circumstances against the objection of plaintiff would be erroneous, and, if such defense were sustained, prejudicial.

4. After a careful reading of the court's charge, we have discovered nothing therein to warrant appellant's criticism thereof. The court, in its instructions, seems to have correctly covered all the important and vital points at issue.

The judgment should be affirmed, and it is so ordered.

Chipman, P. J., and Burnett, J., concurred.

A petition for a rehearing of this cause was denied by the district court of appeal on November 4, 1911, and a petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on December 4, 1911.