[Civ. No. 8336.   Third Dist.   Oct. 26, 1954.]

DAVID CHALMERS et al., Appellants, v. EDWIN W. EBBERT et al., Respondents.

Wilke & Fleury and John M. Sapunor for Appellants.

Russell F. Milham, Gordon J. Aulik, Forrest E. Macomber and Murle C. Shreck for Respondents.

PEEK, J.—This is an appeal by plaintiffs from a judgment entered pursuant to a verdict of the jury in an action of ejectment.

By a lease in writing dated October 15, 1948, but actually signed in January, 1949, defendants Albert J. Rupley, Jr., Harvey E. West, and Leila West demised their interest in certain mining property to plaintiffs Chalmers, Brayton, and to defendant Ebbert for a period of 10 years for the purpose of working the property which was known as the Hazel Creek Mine as a mining prospect; said lease was made renewable at the option of the plaintiffs for another 10-year period.

The lease provided that the rent would be on a royalty basis. Royalty payments were to be made within four days after the tonnage report on the ore from the smelter, and the gross amount from said smelter was received by plaintiffs. In addition the lease provided that:

"It is further understood and agreed that any failure to pay the royalties due under this lease, as hereinbefore provided, when the payments are received by the Lessees from the mint or smelter, shall ipso facto terminate this lease, and no notice whatsoever of said termination shall be required."

It was further provided that the lessees should operate the mine for not less than 25 days per month on a eight-hour-a-day basis, and that any cessation or shutdown of operations in excess of 30 days in any one year would be considered an abandonment unless occasioned by an act of God, and that for such cessation, the lease would be terminated and the lessors need not give any notice of said termination. Also, any assignment of the lease without written consent of the lessors was prohibited.

On October 30, 1948, prior to the actual signing of the lease, Chalmers, Brayton and Ebbert entered into written articles of partnership for the purpose of operating and developing the Hazel Creek Mine. Possession of the mine was taken in the month of October, 1948, also prior to the actual signing of the lease.

In July, 1949, plaintiffs began recovery of sufficient ore from the mine to require the payment of royalties to the lessors.

Thereafter royalty payments were made at irregular intervals as the ore was produced. The practice of the appellants was to haul the ore to a smelter in Grass Valley for milling, and when this process was complete, the smelter would forward its milling report, together with a check in payment of the metals recovered. Plaintiffs would then give the checks and mill returns to their bookkeeper who in turn made the deposits and prepared the royalty checks for the lessors and delivered those checks along with the mill receipts to A. J. Rupley, Sr., at his office in Placerville. In all 11 royalty payments were made and 10 accepted. Six of the payments so made were accepted more than four days after receipt of the check and mill returns by the lessees.

In April, 1950, the partners in the mine lease entered into an agreement with one Wyatt, by the terms of which he was to become a full partner in the operation of the mine, and was to act as operating manager thereof. Wyatt was to install a mill at the mine in return for the interest granted in the partnership.

Wyatt went into possession of the mine in April, 1950, and operated it for the partners until June 2, 1950, when because of a disagreement between himself and his partners he left and thereafter conducted no further mining operations. Wyatt removed his last load of ore from the mine on June 8, 1950, and shipped it to the mill at Grass Valley. The mill forwarded its report and the check in payment thereof to Wyatt on June 22, 1950. The check was payable to the Hazel Creek Mine. Wyatt picked this check up at the post office and carried it with him until July 7, 1950, at which time he delivered it to the bookkeeper. The bookkeeper failed to deposit the check until July 13, 1950.

On July 7, 1950, by letter, the defendants West and Rupley, Jr., notified plaintiff Chalmers of their termination of the lease, which letter read as follows:

"The royalty payments have not been received on the last shipment of ore. Inasmuch as the returns on this shipment have been received by you or your agent and held by you or your agent for a time exceeding the four day period as provided for on page three of the lease, the said lease was automatically terminated by that breach."

Appellant Chalmers wrote to the respondents on July 18, 1950, denying that any breach in the terms of the lease had taken place, and stating that the lessees did not intend to surrender possession of the mine. On July 31, 1950, Rupley,

Jr., his wife and the Wests executed and delivered to respondents Henness, Ebbert (the former partner of plaintiffs) and Snow, a lease to the Hazel Creek Mine for the term of one year to commence on August 1, 1950. On August 21, 1950, defendants forcibly evicted plaintiffs from the mining premises, took possession and have remained in possession at all times thereafter.

Appellants commenced this action to quiet title to their leasehold interest in the property and to recover damages for the period of dispossession on October 14, 1950. Three defenses were interposed by the respondents: (1) That plaintiffs forfeited the leasehold interest by reason of the nonpayment of the last royalty within four days after receipt of the mill returns; (2) that the leasehold interest was forfeited by reason of the breach of the provision of the lease providing for no cessation of operation, in any one year for a period in excess of 30 days; and (3) that the lessees had abandoned the leasehold interest.

The uncontradicted testimony shows that Albert J. Rupley, Sr., the father of defendant A. J. Rupley, Jr., resided in Placerville, El Dorado County. He conducted various businesses in that county and was experienced in mining. He was a friend of the defendants West who admitted that they had little or no knowledge of the mining business. On behalf of his son and the Wests he conducted all of the negotiations preparatory to the execution of the lease. At no time did plaintiffs negotiate with either the Wests or Rupley, Jr. In fact, prior to execution of the lease, the Wests had not met the plaintiffs. Subsequently Rupley, Sr., discussed with Wyatt the possibility of erecting a mill on the premises; he negotiated with plaintiffs concerning the provisions against assignment in order that Wyatt could become a partner of lessees; and he arranged with plaintiffs to waive provisions as to the time for royalty payments.

Plaintiffs' basic contention is that the trial court erred in not instructing the jury, as they had requested, that Rupley, Sr., was, as a matter of law, the agent of lessors.

Respondents' answer to this contention is that even if it could be said that the court erred as plaintiffs contend, the error was immaterial since the defense of abandonment and cessation of work for more than 30 days was an issue at the trial, and that the evidence was sufficient to sustain either defense. Although the record undoubtedly discloses ample

evidence to have supported a finding of abandonment, such evidence merely presented a conflict since there was also sufficient evidence from which the jury might well have concluded to the contrary.

■ We cannot agree with respondents' argument that the case falls within the rule enunciated in *Hume* v. *Fresno Irr. Dist.*, 21 Cal.App.2d 348 [69 P.2d 483]. There the court held that,

". . . where several issues in a cause are tried and submitted to a jury for its determination, a general verdict may not be disturbed for uncertainty, if one issue is sustained by the evidence and is unaffected by error."

While the quoted portion from the Hume case may be said to state the general rule, it is not without its exceptions. Thus it has been held that the rule ". . . should not be applied in such a case as this (jury trial, general verdict) to cure the error of refusing a requested instruction, to which the party was entitled, where the error resulted in submitting to the jury as a question of fact an issue that on the record was one of law." (*Huebotter* v. *Follett*, 27 Cal.2d 765 at 770 [167 P.2d 193]. See also *Clement* v. *State Reclamation Board*, 35 Cal.2d 628, 643 [220 P.2d 897] and *Reagh* v. *San Francisco Unified Sch. Dist.*, 119 Cal.App.2d 65 [259 P.2d 43].)

■ An examination of the instructions given and refused, and the testimony as shown by the record before us, compels the conclusion that the rule as modified in the Huebotter case must be applied. The uncontradicted evidence shows that Rupley, Sr., conducted all of the negotiations relative to the leasing of the premises; that after the lease was negotiated and signed all royalty payments were made to him; that he in turn then delivered checks to the defendants; that he received all mill returns and determined the correctness of the royalty payments; that although the Wests' royalty checks were delivered late, they did not know that such was the case until Rupley, Sr., so informed them; that West never saw the mill returns, although he did testify he obtained information concerning the operation of the mine from men working for the defendants (he could not recall the name of any such person to whom he talked) ; that Rupley, Sr., carried on negotiations relative to a waiver of the provision prohibiting assignment of the lease; that he discussed with plaintiffs and Wyatt the possibility of the latter erecting a mill on the prop-

erty; that he discussed with plaintiffs and thereafter waived the provision relative to the time of payment of royalties; that the defendants West never met the plaintiffs; and, that the Wests' office was immediately adjoining that of Rupley, Sr. Insofar as Rupley, Jr., is concerned, it is admitted that until the time of his death Rupley, Sr., conducted all matters on behalf of his son.

By the statute law of this state, "Actual authority is such as a principal intentionally confers upon the agent, or intentionally, or by want of ordinary care, allows the agent to believe himself to possess," (Civ. Code, § 2316) while ostensible authority "is such as a principal, intentionally or by want of ordinary care, causes or allows a third person to believe the agent to possess." (Civ. Code, § 2317.)

Applying the rules above noted to the instant case, the conclusion is inescapable that both Rupley, Jr., and the Wests, by their own admissions, in allowing Rupley, Sr., to act as their agent in negotiating the lease and after the execution thereof to continue so to act for them in all matters concerning the operation of the mine, brought themselves squarely within one or the other of said code provisions. It was in the power of West to terminate this authority vested in Rupley, Sr., at any time, since it was shown that they were close friends and occupied adjoining offices, but it is apparent from West's testimony that he had no desire to terminate this relationship, for he admittedly had no knowledge of mining operations and Rupley, Sr. did.

The evidence heretofore summarized likewise supports plaintiffs' contentions that at least an ostensible agency existed, as a matter of law, which defendants are estopped to deny.

Although the court did instruct the jury, that as a matter of law, Rupley, Sr. was the agent of his son, it did not so instruct as to the defendants West. If what we have heretofore said is a proper analysis of the record, then it necessarily follows that the court erred in not also instructing the jury concerning the relationship existing between Rupley, Sr., and the Wests. To the contrary, at the request of defendants, the court gave numerous instructions upon the law of agency generally, and concluded with an instruction that the question of whether Rupley, Sr., was the agent for the Wests was one of fact for the jury to decide.

Since the judgment must be reversed for the reasons herein

expressed, it becomes unnecessary to discuss the additional contentions made by plaintiffs.

The judgment is reversed.

Schottky, J., and Paulsen, J. pro tem.*, concurred.

The petition of Harvey E. West, Leila West, Charles Snow, Marion G. Henness and Hazel Creek Mining Corporation for a rehearing was denied November 19, 1954, and their petition for a hearing by the Supreme Court was denied December 22, 1954. Edmonds, J., and Schauer, J., were of the opinion that the petition should be granted.

*Assigned by Chairman of Judicial Council.