Filed 8/6/14  L.A. Arena Funding v. Silktex CA2/4
**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| L.A. ARENA FUNDING, LLC, | B250777 |
| Plaintiff and Appellant, | (Los Angeles County |
| v. | Super. Ct. No. BC434861) |
| SILKTEX, LLC, | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Soussan G. Bruguera, Judge.  Reversed and remanded.

Arent Fox, Paul A. Rigali and Richard D. Buckley for Plaintiff and Appellant.

George J. Cole and Richard S. Singer for Defendant and Respondent.

Plaintiff and appellant L.A. Arena Funding, LLC, owns and operates the Staples Center, a sports and entertainment venue in downtown Los Angeles.

Appellant filed a complaint for breach of contract against respondent Silktex, LLC, alleging that respondent failed to pay for luxury suites that respondent licensed at the Staples Center. The trial court denied appellant's motion for summary judgment and held a bench trial. The trial court concluded that appellant failed to establish that the person who signed the licensing agreements on respondent's behalf had ostensible authority to do so and therefore entered judgment in favor of respondent. Appellant contends that the trial court erred in denying its summary judgment motion and subsequently finding in favor of respondent. We conclude that the findings of fact made by the trial court in its statement of decision do not support its conclusion that appellant failed to establish ostensible authority and accordingly reverse the judgment in favor of respondent. However, the trial court made no findings regarding damages. Because the trial court did not address damages in its statement of decision, we remand for the trial court to determine the amount of damages.

## FACTUAL AND PROCEDURAL BACKGROUND

I. *Factual Background*

The Staples Center is owned by appellant, which is an affiliate of Anschutz Entertainment Group (AEG). In August 2009, the Staples Center's Premium Seating Department held an open house for prospective licensees of luxury suites. Eddie Gomez, an Account Executive in the Premium Seating Department, met Albert Damion Hall and Attala Giles at the open house.[1] According to Giles, he

---

[1]     In a declaration, Gomez mistakenly stated that he met Hall and Phillip Prince at the open house. Gomez subsequently acknowledged that Hall was accompanied by Attala Giles, not Prince.

accompanied Hall to the event at the Staples Center after Phillip Prince asked them to determine the cost of three luxury suites.

The parties dispute what Hall and Giles related to Gomez about their business, but it is undisputed that Gomez took them to dinner and then gave them a tour of the Staples Center, including three luxury suites that were unlicensed and available. After the tour, Gomez introduced Hall and Giles to Jason Gonella, AEG's Vice President of Premium Seating Sales. According to appellant, Hall and Giles explained that they were forming Silktex, a new organization with three divisions, and that they were interested in leasing one luxury suite for each division. Hall said that he was CEO of Silktex, asked Gonella and Gomez to place the suites on hold for them, and agreed to meet later in the week to sign documents. By contrast, according to respondent, Hall never represented that he was CEO of Silktex.[2] Instead, after the tour, Giles and Hall received brochures about the luxury suites and left.

Two days later, Gomez and Gonella met Hall in Sherman Oaks near Hall's home. They discussed the terms of the three agreements, and Hall signed them as CEO of Silktex.

The agreements provided that Silktex would license suites A-3, A-38, and B-36 at the Staples Center for five-year terms each, beginning September 1, 2009. The annual licensing fees were $275,000 per suite for the first three years, with a three percent annual increase after that. Silktex did not make any payments.

On September 11, 2009, Pam Sullivan, Director of Premium Seating Ticketing for the Staples Center, wrote a letter to Hall explaining that payment for the three suites was due on August 21, 2009, and that the full payment of $825,000

---

[2]     As we shall discuss below, the factual findings made by the trial court indicate that Hall did represent that he was CEO of Silktex and that Giles did not object.

was due on September 18, 2009. On September 18, 2009, Chris Cockrell, Vice President of Ticketing and Premium Seating Services, sent a letter to Hall terminating the agreements pursuant to the default provisions of the agreements.

II. *Pretrial Background*

On March 30, 2010, appellant filed a complaint against respondent, asserting three causes of action for breach of contract. Respondent filed an answer, denying liability and asserting numerous affirmative defenses, including the statute of limitations and laches.

Appellant filed a motion for summary judgment and a separate statement of undisputed facts. In its response, respondent asserted that Giles was an owner of Silktex, LLC, not Silktex. Giles admitted attending the open house event at the Staples Center with Hall, but he stated in his declaration that Hall was not authorized to sign an agreement on behalf of Silktex, LLC. He further asserted that, when Hall signed the agreements on August 21, 2009, he was no longer a member of Silktex, LLC.

The summary judgment motion was argued before the trial court and taken under submission. Following the hearing, the trial court indicated that it had "a strong tentative ruling to grant the motion," but requested further briefing on Hall's actual and ostensible authority to bind respondent. The parties filed supplemental briefs, and the matter was submitted.

On July 13, 2011, the trial court denied appellant's summary judgment motion. The court stated in its ruling that appellant "submitted sufficient evidence to establish the breach of contract cause of action." The court relied on appellant's evidence that Giles was a member and owner of respondent and was aware that Hall held himself out as respondent's CEO at the open house. The court also cited

4

the evidence that Giles and Hall told a sales representative that they ran an apparel company and were interested in licensing three luxury suites; Gomez and Gonella discussed the agreements with Hall; and Hall signed the agreements as CEO of respondent.

After concluding that appellant had established each element of the breach of contract cause of action, the court concluded that respondent had met its burden of creating a triable issue of material fact as to whether respondent was liable for breach of the agreements. Citing respondent's evidence that Hall was not authorized to enter into an agreement on respondent's behalf and evidence that appellant licensed the suites to a third party, the court denied the summary judgment motion.

III.    *Trial*

The case was called for a court trial on February 21, 2012, but the matter was continued several times. Prior to the presentation of evidence, the court asked the parties to submit proposed findings of fact and conclusions of law. Each party filed proposed findings of fact and conclusions of law.

At trial, appellant presented testimony by Gonella and Cockrell. Gonella testified that Gomez introduced him to Hall and Giles at the August 2009 event for prospective luxury suite licensees. Gomez asked Gonella to meet with Hall and Giles, who had expressed interest in multiple suites. Gonella testified that Hall and Giles expressed "an extremely strong interest" in leasing three luxury suites. He stated that Hall "led the conversation, but it seemed like there was a consensus at the table that that was the direction everyone wanted to go in," and that Giles did not express any disagreement regarding licensing the suites. Hall explained that they were forming a new organization with three divisions – clothing, music, and

5

touring/event – and that they needed one suite for each of the three divisions.  Hall stated that he was CEO of Silktex.  Giles did not object to any of Hall's statements and appeared to agree with Hall.

Hall asked Gonella to place the three suites on hold, and they agreed to meet by the end of the week to sign documents.  Gonella and Gomez met Hall in Sherman Oaks two days later, and Hall signed the documents to license three luxury suites.  Timothy Leiweke subsequently signed the agreements on behalf of appellant.  Gomez or someone else on appellant's staff sent copies of the three agreements to Silktex.  Hall indicated that Silktex would make an initial payment of $50,000 by the end of the month, but Silktex never made any payments.

Gonella contacted Hall via email to discuss the default and held numerous telephone conversations with him regarding the payment.  There was some discussion about leasing only one suite instead of three, but they had no further communications after October 1, 2009.

Gonella stated that appellant had no standard procedure for verifying a company's financial background, but he conducted a Google search on Silktex before executing the contracts.  The Google search resulted in a financial report on a company named Silktex with which Hall was associated.  Appellant did not request any type of credit application or verify Silktex's business address.

Cockrell testified that Silktex made no payments after signing the license agreements for three luxury suites in August 2009.  Cockrell therefore had his assistant, Sullivan, send a letter to respondent requesting payment.  Cockrell subsequently sent a letter to respondent terminating the agreements.

Cockrell testified that he calculated appellant's damages as $825,000 ($275,000 for each of three suites), plus interest calculated at 10 percent from September 18, 2009 to April 12, 2012.  Under cross-examination, Cockrell stated

6

that he did not know if the luxury suites were leased to anyone in 2009 or 2010. However, he acknowledged that appellant leased the luxury suites to someone else as of the end of 2011.

Giles testified that he was a founder and partner in Silktex, LLC, and that the company had never been known simply as "Silktex." He and Hall had been friends for 20 years and partners in a company named Hall of Fame Entertainment.

Giles testified that he attended the open house event at the Staples Center because Hall asked him for a ride. Giles accompanied Hall but did not intend to lease any suites.[3] Giles acknowledged meeting with Gomez and Gonella and taking a tour of the luxury suites. Giles denied that Hall represented to anyone that he was the CEO of Silktex.

According to Giles, when Gomez asked Giles and Hall about their company, they explained that they had two companies in which they were partners – Hall of Fame Entertainment and Silktex, an apparel company they had just started. Silktex was a limited liability company formed in July 2009. After the tour, they went to Gonella's office, where Gonella gave them three brochures on the luxury suites. Giles and Hall then left and went to see Prince, whom Giles described as his partner and co-founder in Silktex. Giles and Hall showed Prince the brochures, but Prince was not interested in the luxury suites.

_____

[3] Giles' trial testimony is somewhat inconsistent with his declaration submitted in support of respondent's opposition to appellant's summary judgment motion. In his declaration, he stated that he attended the open house with Hall in order to investigate the possibility of leasing luxury suites for Prince's father-in-law, Mr. Haung. Prince similarly stated in his declaration that Giles attended the event on behalf of Haung.

Giles stated in a September 2010 deposition that he attended the open house with Hall because Hall told him he was going to meet someone at the Staples Center to see how much the luxury suites cost. Giles told Prince what he and Hall were doing, and Prince asked him to find out the price of three luxury suites.

Giles testified that Hall was never the CEO of Silktex, although he acknowledged that Hall had been a member of the board. Giles also acknowledged that he told Gomez that he and Hall started Silktex, an apparel company. He testified that no one at Silktex knew that Hall signed the agreements on Silktex's behalf. Giles first learned about the agreements when this action was filed.

Appellant introduced into evidence an email from Giles to Hall, dated August 28, 2009, in which Giles wrote that he and Hall were both CEOs of Silktex.[4] Following the presentation of evidence, the trial court directed the parties to submit written closing arguments. Both parties complied.

## IV. *Statement of Decision*

On July 16, 2013, appellant filed a request for a statement of decision.[5] The trial court issued a statement of decision shortly thereafter. The court relied on the findings of fact provided in appellant's proposed findings of fact and conclusions of law that were filed prior to the presentation of evidence. Despite relying on appellant's findings of fact, the court entered judgment in favor of respondent, stating: "From inception and on numerous occasions authority to support binding Silktex has been requested. [Appellant] responded with argument that 'at a minimum there was ostensible authority.' Yet review of the numerous briefs and cases submitted in support reveal that each and every case is distinguishable in this matter where [appellant] seeks over a million dollars and thus after serious

---

[4]    The email states: "The board of silktex is . . . Damion hall and attala zane giles ceo [*sic*]." Giles testified that this email concerned "the set-up to a music division of Silktex, which we were in the process of forming."

[5]    This request followed numerous delays and other filings not pertinent here.

consideration of all authority, judgment is ordered for [respondent]." Judgment was entered in favor of respondent.

## DISCUSSION

### I.    *Ostensible Agency*

Appellant contends that the trial court erred in concluding that Hall did not have authority to bind Silktex to the agreements and thus entering judgment in favor of respondent.[6] We conclude that the trial court's conclusion is not supported by its factual findings and therefore reverse.

"We view the facts most favorable to the judgment under the principle requiring us to presume the lower court's judgment is correct, and draw all inferences and presumptions necessary to support it. [Citations.] '"Where [a trial court's] statement of decision sets forth the factual and legal basis for the decision, any conflict in the evidence or reasonable inferences to be drawn from the facts will be resolved in support of the determination of the trial court decision."'

---

[6]    Appellant's first contention is that the trial court erred in denying its summary judgment motion. "An order denying a motion for summary judgment or summary adjudication is not an appealable order. [Citations.] However, that order is an interlocutory order that may be reviewed on direct appeal from a final judgment entered after a trial. [Citations.] Although orders denying motions for summary judgment or summary adjudication may be reviewed on direct appeal from a judgment after trial, the appellant must nevertheless show the purported error constituted prejudicial, or reversible, error (i.e., caused a miscarriage of justice). [Citation.] In general, an order denying a motion for summary judgment or summary adjudication does not constitute prejudicial error if the same question was subsequently decided adversely to the moving party after a trial on the merits. [Citations.]" (*Federal Deposit Ins. Corp. v. Dintino* (2008) 167 Cal.App.4th 333, 343.) Appellant cannot show prejudicial error because the same question was subsequently decided adversely to it. We therefore decline to address the denial of appellant's summary judgment motion. Nonetheless, we conclude that the trial court erred in awarding judgment to respondent.

9

[Citation.]"  (*Chapala Management Corp. v. Stanton* (2010) 186 Cal.App.4th 1532, 1535.)

Where the parties "do[] not contend that the trial court's factual findings are unsupported by substantial evidence, we are bound by them and do not review the evidence.  [Citation.]  Instead, we accept the facts set forth in the statement of decision, and determine whether those factual findings support the judgment as a matter of law.  [Citation.]"  (*Rael v. Davis* (2008) 166 Cal.App.4th 1608, 1617 (*Rael*).)

The trial court here relied on the findings of fact from appellant's proposed findings of fact and conclusions of law.  Thus, the statement of decision sets forth the following factual basis for its decision.

During the week of August 17, 2009, Giles and Hall attended the open house at the Staples Center, where they met Gonella.  Hall, in the presence of Giles, told Gonella that he (Hall) was at the Staples Center on behalf of Silktex, a company with three principal purposes:  entertainment, music, and apparel.  Giles did not object when Hall made these statements.

Hall told Gonella that Silktex needed to license three luxury suites, one for each business purpose.  Hall also told Gonella that he was the CEO of Silktex and had decision making control.  Giles was present for these representations and did not object to any of them.

After this meeting, Gonella and his colleagues prepared the three licensing agreements for the luxury suites.  On August 21, 2009, Gonella and Gomez met with Hall in Sherman Oaks and discussed the terms of the agreements.  Hall signed the agreements as "co-CEO" of Silktex.  The annual license fees were $275,000 per agreement for the first three years, with a three percent annual increase after the 2011-2012 year.  The agreements provided that the license fee for the 2009-

10

2010 year was payable in full "prior to or concurrently with the execution of" each agreement.

After setting forth the above facts, the court found in favor of Silktex, reasoning that the cases on which appellant relied regarding ostensible authority were "distinguishable in this matter where [appellant] seeks over a million dollars." The cases on which appellant relied regarding ostensible authority were *Chalmers v. Ebbert* (1954) 128 Cal.App.2d 374 (*Chalmers*), *Leavens v. Pinkham & McKevitt* (1912) 164 Cal. 242 (*Leavens*), and *Robinson v. American Fish etc. Co.* (1911) 17 Cal.App. 212 (*Robinson*).

Respondent does not dispute the trial court's factual findings. Instead, respondent argues that the trial court's conclusion is supported by the evidence. In support of this argument, respondent cites Giles' testimony that Hall was never the CEO of Silktex and that Hall did not have authority to sign the agreements; Giles' denial that Hall ever made those statements at the open house; and Giles' testimony that he did not have actual knowledge that Hall entered into the agreements. The problem, however, is that the trial court did not rely on the evidence cited by respondent. Instead, the statement of decision indicates that the trial court relied on appellant's proposed findings of fact and concluded that those facts did not, as a matter of law, establish that Hall had authority to bind Silktex to the agreements.

The question, accordingly, is not whether Giles, during the course of this litigation, denied that Hall was the CEO, or even whether Hall actually was the CEO at the time of the open house. Instead, the question is whether the court's factual findings support the conclusion that Hall did not have authority to bind Silktex to the agreements. (*Rael*, *supra*, 166 Cal.App.4th at p. 1617.) Thus, the evidence cited by respondent is not relevant to our inquiry.

11

"'An agent is one who represents another, called the principal, in dealings with third persons.' (Civ. Code, § 2295.) 'In California agency is either actual or ostensible. (Civ. Code, § 2298.)" (*J.L. v. Children's Institute, Inc.* (2009) 177 Cal.App.4th 388, 403-404.) "Actual authority is such as a principal intentionally confers upon the agent, or intentionally, or by want of ordinary care allows the agent to believe himself to possess." (Civ. Code, § 2316.) "Ostensible authority is such as a principal, intentionally or by want of ordinary care, causes or allows a third person to believe the agent to possess." (Civ. Code, § 2317.)

"Ostensible agency . . . '"may be implied from the facts of a particular case, and if a principal by his acts has led others to believe that he has conferred authority upon an agent, he cannot be heard to assert, as against third parties who have relied thereon in good faith, that he did not intend to confer such power . . . ."' [Citation.] . . . Before recovery can be had against the principal for the acts of an ostensible agent, the person dealing with an agent must do so with belief in the agent's authority and this belief must be a reasonable one. Such belief must be generated by some act or neglect by the principal sought to be charged and the person relying on the agent's apparent authority must not be guilty of neglect [citation].' [Citation.] [¶] '"An agent's authority may be proved by circumstantial evidence."' [Citation.] The burden of proving ostensible agency is upon the party asserting that relationship. [Citations.]" (*Ermoian v. Desert Hospital* (2007) 152 Cal.App.4th 475, 502-503.) "'[W]here the principal knows that the agent holds himself out as clothed with certain authority, and remains silent, such conduct on the part of the principal may give rise to liability. [Citation.]' [Citation.]" (*Gulf Ins. Co. v. TIG Ins. Co.* (2001) 86 Cal.App.4th 422, 439 (*Gulf Ins. Co.*).)

Here, the trial court's findings of fact state that Giles did not object when Hall represented that he was the CEO of Silktex with decision making authority.

12

Nor did Giles object to Hall's representation that Silktex needed to license three luxury suites, one for each of its business purposes. Gonella and his colleagues then prepared the licensing agreements, and Gonella and Gomez met with Hall. After Gonella and Gomez discussed the terms of the agreements with Hall, Hall signed the agreements as the co-CEO of Silktex. These findings are entirely inconsistent with the trial court's conclusion that Hall did not have authority to bind Silktex. Contrary to the trial court's conclusion, these findings permit no reasonable conclusion other than that Hall was the ostensible agent of Silktex.

Where the conduct of the ostensible agent and the principal gives no indication of a limitation on the ostensible agent's authority, a third party is entitled to rely on the appearance of agency. (See *Robinson*, *supra*, 17 Cal.App. at p. 218; *Leavens*, *supra*, 164 Cal. at p. 248; *Chalmers*, *supra*, 128 Cal.App.2d at p. 379.) For example, in *Leavens*, the agent previously acted on behalf of the principal, with no indication of any limitation on his authority. The agent then entered into contracts that were conceded to be unauthorized by the principal. The jury found that the agent had ostensible authority to enter into those contracts, and the court held that the evidence was sufficient to support the jury's conclusion. (*Leavens*, *supra*, 164 Cal. at p. 248.) The court reasoned that the contracts were "within the apparent scope of his employment, and third persons acting in good faith and without notice of or reasons to suspect any limitation on his authority, are entitled to rely on such appearances. [Citation.]" (*Ibid.*; see also *Robinson*, *supra*, 17 Cal.App. at p. 218 [holding that a jury's finding of ostensible agency was supported by the evidence, reasoning that "[t]here had been nothing" in either the ostensible agent's conduct or the principal's conduct to indicate that the agent was "without authority" to act on behalf of the principal].)

Thus, if neither the ostensible agent nor the principal gives a third party reason to suspect a limitation on the ostensible agent's authority, that third party is entitled to rely on the appearance of agency. (*Robinson*, *supra*, 17 Cal.App. at p. 218; *Leavens*, *supra*, 164 Cal. at p. 248; see also *Gulf Ins. Co.*, *supra*, 86 Cal.App.4th at p. 439 [silence on the part of a principal who "knows that the agent holds himself out as clothed with certain authority" may lead to a finding of ostensible agency].) Moreover, an active representation of agency is not required in order to find ostensible agency. A passive "act or neglect . . . could give rise to ostensible agency . . . ." (*Associated Creditors' Agency v. Davis* (1975) 13 Cal.3d 374, 405 (*Associated Creditors' Agency*).)

In *Associated Creditors' Agency*, general partners who constructed and operated a golf course permitted a food and beverage concessionaire at the golf course to use the partnership's liquor license. The partners argued that their permitting the concessionaire to use and display the license was not a representation that the concessionaire was their agent because investigation would reveal the concessionaire was an independent contractor. (*Associated Creditors' Agency*, *supra*, 13 Cal.3d at p. 401.) The California Supreme Court concluded that the trial court's finding of no ostensible agency was not supported by the evidence because the information that the partners authorized the use of the license "would be a representation chargeable to the partners . . . ." (*Id.* at p. 405.) In *Associated Creditors' Agency*, therefore, the permissive use of the partners' license was sufficient evidence for the court to reverse the trial court's finding of no ostensible agency. (*Ibid.*)

Similar to *Associated Creditors' Agency*, Giles permitted Hall to state that he was the CEO of Silktex and to tell Gonella that Silktex needed to license three luxury suites. The trial court found that Giles did not object to these

14

representations. Nothing in Hall's or Giles' conduct reasonably caused appellant to suspect that Hall did not have authority to enter into the licensing agreements. (See *Robinson*, *supra*, 17 Cal.App. at p. 218.)

Respondent argues that appellant's belief in Hall's ostensible agency was unreasonable, pointing out that "the parties had no prior business dealings and didn't even exchange business cards." Respondent further cites evidence that appellant "never verified the business address, took a credit application or looked in [*sic*] the financial resources of Silktex." While appellant's conduct might be somewhat puzzling as a business practice, the trial court's findings of fact do not support a finding that appellant's belief in Hall's ostensible agency was unreasonable.

"[I]t has been consistently held '[w]ith regard to ostensible authority . . . that, if the principal clothes his agent with such authority, a person dealing with the agent, in the absence of any conduct on the part of either principal or agent warranting inquiry, is entitled to rely upon that apparent authority . . . .' [Citation.]" (*United States Credit Bureau, Inc. v. Cheney* (1965) 235 Cal.App.2d 357, 360.) Here, the factual findings establish that neither Giles nor Hall engaged in conduct that would warrant further inquiry. Appellant accordingly was entitled to rely upon Hall's apparent authority to act on respondent's behalf.

Hall represented to Gomez and Gonella that he had authority to act on respondent's behalf, and nothing in his or Giles' conduct gave appellant notice of or reason to suspect that Hall did not have such authority. Pursuant to *Associated Creditors' Agency* and the cases cited by appellant in the trial court, these facts support the conclusion that Hall had ostensible agency to enter into the agreements. We therefore reverse the judgment in favor of respondent.

15

II.     *Respondent's Miscellaneous Arguments*

      A.     *Express Written Authority*

Respondent argues that Hall needed express written authority to act on respondent's behalf.  Respondent relies on *Ellis v. Mihelis* (1963) 60 Cal.2d 206 (*Ellis*) and *Elias Real  Estate, LLC v. Tseng* (2007) 156 Cal.App.4th 425 (*Elias*) to argue that written authority was required because the licensing agreements were conduct that was not in the usual course of business, and written authority is necessary in situations where the statute of frauds would be applicable.  *Ellis* and *Elias* are distinguishable.

Both *Ellis* and *Elias* concerned the sale of real property, which is subject to the statute of frauds, and both addressed provisions of the Uniform Partnership Act overriding the statute of frauds.  (See *Ellis*, *supra*, 60 Cal.2d at p. 217; *Elias*, *supra*, 156 Cal.App.4th at pp. 431-432.)  The provisions at issue "'distinguish between acts of a partner which bind the partnership because of his status as a partner without any express authority being required and acts binding on the partnership only after express authorization by all partners.'" (*Elias*, *supra*, 156 Cal.App.4th at p. 432.)  There is no evidence or argument here that the Uniform Partnership Act applies.  The principles regarding express authority for a partner's acts not in the usual course of business accordingly do not apply here.

      B.     *Equal Dignities Rule*

Respondent relies on the equal dignities rule of Civil Code section 2309, which states:  "An oral authorization is sufficient for any purpose, except that an authority to enter into a contract required by law to be in writing can only be given by an instrument in writing."  We conclude, however, that respondent waived this defense by failing to raise it in its answer to the complaint.  (See *Quantification*

*Settlement Agreement Cases* (2011) 201 Cal.App.4th 758, 813 ["'A party who fails to plead affirmative defenses waives them.'"]; *Walton v. City of Red Bluff* (1991) 2 Cal.App.4th 117, 131 [statute of frauds is an affirmative defense that is waived if it is not pleaded in the answer]; 3 Ann Taylor Schwing California Affirmative Defenses § 54:7 (2d ed. 2014) ["The defendant should plead the equal dignities rule as a defense to avoid any claim of waiver."].)

Even if the defense was not waived, "[a] principal is estopped to raise the equal dignities rule against a contracting third party if the principal, by its own conduct, lulls the third party into believing that its agent has written authority to enter the contract or has no need of written authority. [Citations.]" (*Kerner v. Hughes Tool Co.* (1976) 56 Cal.App.3d 924, 934.) As discussed above, the trial court found that Giles did not object to Hall's statements that he was the CEO of Silktex with decision making authority. Giles thus lulled appellant into believing that Hall either had written authority to enter the contract or had no need of written authority. (*Ibid.*)


C.  *Former Corporations Code Sections 17052 and 17157*

Respondent cites former Corporations Code sections 17052, subdivision (a), which requires limited liability companies to include such a designation in their names, and 17157, subdivision (a), which provides that every member is an agent of a limited liability company.[7] These statutes merely set forth general principles

---

[7]  The Corporations Code was revised, and these code sections repealed, effective January 1, 2014, when the Beverly-Killea Limited Liability Company Act was repealed, and the California Revised Uniform Limited Liability Company Act was enacted. (Stats. 2012, ch. 419, § 19.) Former section 17052, subdivision (a) provided that "The name of each limited liability company as set forth in its articles of organization: [¶] (a) Shall contain either the words 'limited liability company' or the abbreviation 'LLC' or 'L.L.C.' as the last words in the name of the limited liability company. The words 'limited' and

relating to limited liability companies and do not have any bearing on the issue at hand.

D.   *Execution and Formation of the Contracts*

Respondent contends that the licensing agreements were not executed because Silktex never made any payments.  The agreements provided that "The First Year License Fee shall be paid in full prior to or concurrently with the execution of this Agreement."  The signature pages, on which Hall and Timothy J. Leiweke, President of appellant, signed, state:  "IN WITNESS WHEREOF, this Agreement has been executed by Licensee and Licensor as of the date first above written," which was August 21, 2009.

"Generally, a written agreement is 'executed' when all parties sign the agreement."  (14 Cal.Jur.3d Contracts § 148; see also *Nielsen Construction Co. v. International Iron Products* (1993) 18 Cal.App.4th 863, 869 ["a written agreement is 'executed' when all parties sign the agreement," not upon completion of performance of the contract obligations].)  The licensing agreements do not set forth any conditions precedent to execution.

We further reject respondent's arguments that there was no mutual assent or delivery of the contract to Silktex.  Respondent's arguments are dependent upon a

'company' may be abbreviated to 'Ltd.' and 'Co.,' respectively."  Former section 17157, subdivision (a) provided, in pertinent part that "every member is an agent of the limited liability company for the purpose of its business or affairs, and the act of any member, including, but not limited to, the execution in the name of the limited liability company of any instrument, for the apparent purpose of carrying on in the usual way the business or affairs of the limited liability company of which that person is a member, binds the limited liability company, unless the member so acting has, in fact, no authority to act for the limited liability company in the particular matter, and the person with whom the member is dealing has actual knowledge of the fact that the member has no such authority."

conclusion that Hall did not have authority to enter into the contracts. As discussed above, this conclusion is contrary to the factual findings in the statement of decision.

III.    *Damages*

Appellant asks us to enter judgment in its favor in the full amount it requested at trial pursuant to the liquidated damages provision in the contracts. On all the issues but damages, appellant prevailed; the factual findings in the statement of decision admit of no other conclusion. However, the trial court did not make any findings regarding the applicability of the liquidated damages provision and the amount of damages, if any, to which appellant is entitled, and the evidence regarding damages is disputed. We therefore remand for the trial court to determine the amount of damages, if any, to which appellant is entitled.[8]

---

[8]    Because appellant "had a full and fair opportunity" to present its case regarding damages, we do not believe a retrial is necessary for the trial court to make its determination. (*Kelly v. Haag* (2006) 145 Cal.App.4th 910, 919.)

## DISPOSITION

The judgment in favor of respondent is reversed.  The matter is remanded for a determination of the amount of damages.  Appellant is entitled to recover costs on appeal.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


WILLHITE, J.


We concur:


EPSTEIN, P. J.


EDMON, J.*


---

*Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant

20

to article VI, section 6 of the California Constitution.